### WEYMAN-BRUTON CO. v. LADD.

(Circuit Court of Appeals, Eighth Circuit. March 9, 1916.)

No. 4511.

1. APPEAL AND ERROR ⬅185(1)—RESERVATION OF GROUNDS OF REVIEW—WANT OF JURISDICTION OF LOWER COURT.

Under Judicial Code (Act March 3, 1911, c. 231) § 37, 36 Stat. 1098 (Comp. St. 1913, § 1019), providing that if, in any suit in the District Court, it shall appear at any time that the suit does not really and substantially involve a controversy properly within the jurisdiction of the District Court, it shall proceed no further therein, but shall dismiss the suit, or remand it to the state court, the Circuit Court of Appeals should dismiss for want of jurisdiction a suit over which the District Court had no jurisdiction, but which it dismissed on the merits, even if the question of jurisdiction was not raised by the defendant in the court below or on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1166–1168, 1170–1176; Dec. Dig. ⬅185(1).]

2. COURTS ⬅303(2)—SUITS AGAINST STATES—UNAUTHORIZED ACTS OF OFFICER—JURISDICTION.

If the acts of a state officer are beyond the authority vested in him, an action in trespass or suit for injunction against him is not an action or suit against the state, but may be entertained by the federal courts, if requisite jurisdictional facts appear.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 844½; Dec. Dig. ⬅303(2).]

3. INJUNCTION ⬅105(1)—JURISDICTION—CRIMINAL PROSECUTIONS.

The fact that a state statute can be enforced only by criminal prosecutions does not defeat the jurisdiction of equity to enjoin unlawful interference with property rights by unauthorized criminal proceedings under the statute.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 178; Dec. Dig. ⬅105(1).]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. CONSTITUTIONAL LAW $\iff$46(1)—DETERMINATION OF CONSTITUTIONAL QUES-
   TION—NECESSITY.
   Courts will never pass on the constitutionality of a statute, unless it
   is absolutely necessary.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43,
   45; Dec. Dig. $\iff$46(1).]

5. INJUNCTION $\iff$128—HEALTH—REGULATIONS—EVIDENCE—"SNUFF"—"FINE
   CUT CHEWING TOBACCO."
   In a suit to restrain a state food commissioner from interfering with
   the sale of plaintiff's tobacco under the authority of Laws N. D. 1913, c.
   271, prohibiting the sale of snuff, evidence *held* to show that the tobacco
   was not a "snuff," which is ordinarily understood as tobacco which has
   been fermented and powdered and is primarily intended to be taken by
   the nose, but may also be taken in the mouth for absorption by the gums
   without mastication, but was a "fine cut chewing tobacco," which is gen-
   erally recognized, in accordance with the regulations of the Internal
   Revenue Department, as tobacco which has been cut or prepared from
   manufactured plug or twist tobacco, or from tobacco scraps, cuts, or
   clippings, and which is practically intended to be used exclusively as a
   chewing tobacco.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 278; Dec
   Dig. $\iff$128.]

Appeal from the District Court of the United States for the District
of North Dakota; Charles F. Amidon, Judge.

Suit by the Weyman-Bruton Company against E. F. Ladd. From
a decree denying the relief asked, and dismissing the bill, plaintiff ap-
peals. Reversed and remanded, with directions to grant the injunc-
tion prayed for.

This is an action by the appellant, who is engaged in the manufacture of
tobacco, manufacturing, among others, a fine cut chewing tobacco known to
the trade and branded as "W-B Fine Cut Chewing Tobacco," to enjoin the
appellee, who is the state chemist and food commissioner of the state of North
Dakota, from preventing the appellant and tobacco dealers in that state from
selling this tobacco in the state, which he declared to be a snuff within the
prohibition of the laws of that state. We shall refer to the parties as plain-
tiff and defendant respectively, that being their relation in the District Court.

The bill charges that the defendant, in his official capacity, has sent circu-
lars to dealers in tobacco throughout the state, advising them that this to-
bacco is a snuff, and warning them that any further sales of this tobacco
would result in prosecutions under the law; that the plaintiff has expended
large sums of money in advertising this tobacco in that state, which it is
claimed is not a snuff, but a fine cut chewing tobacco; that unless the de-
fendant is prevented from doing so, the plaintiff, who has a very large trade
of that tobacco in the state, would suffer damages in excess of $100,000; that
by reason of these circulars and threats of prosecutions, the penalty being a
fine of not less than $500 and not more than $1,000 upon a conviction for
the first offense, and for each subsequent conviction confinement in a jail for not
less than 6 months, the plaintiff's business is practically destroyed, and great
loss sustained by it. The prayer is for an injunction, to prevent the defend-
ant from carrying into effect the threats of prosecutions.

The answer seeks to justify the acts of the defendant, which are admitted,
by claiming that this tobacco is in fact snuff within the meaning of the act
of the Legislature of the state of North Dakota, entitled "An act to prohibit
the importation or sale of snuff or any substitute therefor, and providing a
penalty therefor, and to repeal chapter 277 of the Session Laws of North
Dakota of 1911," approved March 7, 1913 (Laws N. D. 1913, c. 271), and which
act is as follows:

$\iff$For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Prohibiting Manufacture and Sale of Snuff.

"Be it enacted by the Legislative Assembly of the state of North Dakota: "Section 1. ʻ(Sale of Snuff Prohibited.) It shall be unlawful for any person, firm or corporation to import, manufacture, distribute, transport, sell, offer for sale, or to have in possession for sale, or to give away any snuff or any substitute therefor, under whatever name called, and as defined in this act.

"Sec. 2. (Snuff Defined.) For the purpose of this act, snuff is defined as any tobacco that has been fermented, or dried, or flavored, or pulverized, or cut, or scented, or otherwise treated, or any substitute therefor or imitation thereof, intended to be taken by the mouth,. or nose: Provided, however, that ordinary plug, fine cut, or long cut chewing tobacco as now commonly known to the trade of this state shall not be included in such definition.

"Sec. 3. (Officers to Enforce.) It shall be the duty of the state's attorneys, sheriffs, police ˈofficers, health officers, and the food commissioners to enforce the provisions of this statute, and for the purpose thereof they shall have ingress and egress to all places of business where it is believed that snuff, as hereinbefore defined, is kept in violation of this act. Grand juries ˈand state's attorneys shall have full inquisitorial powers over offenses committed ·under this act, and state's attorneys shall make investigation and conduct prosecutions when proper evidence is furnished to them.

"Sec. 4. (Repeal.) Chapter 277 of the Session Laws of North Dakota of 1911 is hereby expressly repealed.

"Sec. 5. (Penalty.) Any person or persons violating the provisions of this ●statute or who aids another to violate the same shall be guilty of a. misdemeanor and on conviction shall be fined not less than $500.00 nor more than $1,000.00 .for the first offense, and for each subsequent conviction shall be confined in jail for not less than six months.

"Approved March 7, 1913."

The answer states that this tobacco is a snuff, because: (1) A chemical analysis shows that it is similar in amount of moisture and in nicotine content to "Right Cut" and "Copenhagen" tobaccos, two other products manufactured and sold by the plaintiff, and held to be snuff. (2) That the method of using "W-B Cut," as evidenced by plaintiff's advertisement of the product, is similar to the method of using "Copenhagen Snuff" and "Right Cut Chewing Tobacco," the latter having been held by the Supreme Court of North Dakota, in State v. Olson, 26 N. D. 304, 144 N. W. 661, to be snuff within the meaning of the above statute.

Upon the final hearing a final decree was rendered, denying the relief asked by plaintiff, and dismissing the bill, with costs in favor of the defendant, from which decree this appeal is prosecuted.

Engerud, Holt & Frame, of Fargo, N. D., and A. H. Burroughs and H. Lewis Brown, both of New York City, for appellant.

Henry J. Linde, Atty. Gen., and Francis J. Murphy and H. R. Bitzing, Asst. Attys. Gen., for appellee.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). [1] The defendant questions the jurisdiction of the District Court to entertain the bill, upon the ground that the action is in effect against the state, the defendant merely acting as an officer of the state in enforcing its laws, and upon the further ground that as the state can, under the statute, only proceed by criminal prosecutions, a court of equity cannot, by injunction, prevent the enforcement of the criminal laws of the state.

The jurisdiction of the District Court, or as a court of equity, was not questioned by a motion to dismiss, nor did the court below dismiss

the bill upon either of these grounds. That it was not dismissed for want of jurisdiction as a national court is conclusively shown by the fact that the court awarded to the defendant costs, which could not have been done if the dismissal had been for such want of jurisdiction. Still, if the court was without jurisdiction, it would be our duty to direct a dismissal upon that ground, and not on the merits, even if the defendant had not raised the question, in either court. Section 37, Judicial Code. Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, 42 L. Ed. 682.

[2] Whatever might have been the rule at an earlier date, it is now beyond question that, if the acts of an officer are beyond the authority vested in him by law, an action against him for trespass, in an action at law, or to enjoin him in equity, is within the jurisdiction of the national courts, if there is the proper diversity of citizenship, and the amount involved exceeds $3,000, both of which appear from the face of the complaint in the instant case. Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Western Union Tel. Co. v. Andrews, 216 U. S 165, 30 Sup. Ct. 286, 54 L. Ed. 430; Harrison v. St. Louis & San Francisco R. Co., 232 U. S. 318, 34 Sup. Ct. 333, 58 L. Ed. 621, L. R. A. 1915F, 1187.

[3] Nor does the fact that the statute can only be enforced by criminal proceedings affect the jurisdiction of the court, sitting in equity, if property rights will be destroyed by the unlawful interference by criminal proceedings. Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169; Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 439, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Missouri Pacific Ry. Co. v. Omaha, 235 U. S. 121, 130, 35 Sup. Ct. 82, 59 L. Ed. 157. The court had jurisdiction as a national court, as well as an equity court.

[4] Counsel have very elaborately argued the constitutionality of the statute, but courts will never pass upon the constitutionality of a statute, unless it is absolutely necessary, which we do not find to be the case in this proceeding.

[5] State v. Olson, supra, is relied on by the defendant as conclusive that the decree of the court below, dismissing the complaint, should be affirmed. But the facts in that case differ so materially from those in the case at bar that, in our opinion, it has not the effect claimed for it. The tobacco there involved was "Right Cut Chewing Tobacco." The court there found from the evidence that "Right Cut" is a snuff, and was intended to be and was actually used as a snuff. The court found that it was actually used as a snuff, that it was to be used—

"upon the gums, and between the lip and the gums, and that such use is not the ordinary, and we might say the necessary, use of even the finest of the other tobaccos (chewing) mentioned. * * * We hold, in short, that fine cut chewing tobacco is generally excluded (by the statute), but that fine cut snuff is not. * * * We are quite satisfied that the evidence in the case at bar justifies the conclusion at which we have arrived."

The learned trial judge found the issues in favor of the defendant, and while the findings of facts by a chancellor are entitled to the highest consideration, and are presumptively treated as correct, they do not

have the conclusive effect of a verdict by a jury, and if clearly against the weight of the evidence will be set aside, especially when, as in this case, a great deal of the evidence was by depositions and ex parte affidavits. What are the facts, as shown by the overwhelming weight of the evidence? As to the chemical testimony, counsel for the defendant in their brief say:

"The evidence produced by the chemists contributes but little to a solution of the problem. With respect to chemical content there is no material dispute. It is only when the experts proceed to draw conclusions from known chemical and physical facts that a divergence appears."

We may therefore lay aside that testimony. Snuff, as ordinarily understood, as shown by the undisputed evidence, is tobacco that (1) has been fermented, (2) powdered, or pulverized, and (3) is primarily intended to be taken by the nose, but may also be taken in the mouth. On the other hand, fine cut chewing tobacco is generally recognized by the trade in accordance with the regulations of the United States Internal Revenue Department, which are as follows:

"Fine cut chewing tobacco will be regarded as that class of tobacco, which has been prepared or cut from manufactured plug, or twist tobacco, or from tobacco scraps, cuts, or clippings, which is practically intended to be used exclusively as a chewing tobacco, and known and accepted by the trade, as fine cut chewing tobacco." Regulations of the Internal Revenue Department, Revised July 1, 1910, page 43.

The uncontradicted evidence of a number of the officers, managers, and superintendents of the plaintiff shows that this tobacco is intended, in good faith, as a fine cut chewing tobacco, and not as a snuff; that for years experiments had been made to produce it as a good tasting chewing tobacco, which would be different and distinctive from other chewing tobaccos, and become more popular. It is also shown that it comes strictly within the requirements of the regulations of the Internal Revenue Department, and differs entirely from snuff, and that it is not fermented.

In addition to these witnesses is the testimony of a number of other manufacturers of tobacco, as well as snuff, all of whom testified that the tobacco in controversy is not a snuff, but a chewing tobacco. The president of the Geo. W. Helme Company, which manufactures snuff exclusively, testified that this tobacco is not a snuff, but a chewing tobacco, nor does it resemble snuff, which he describes as being—

"either ground and powdered, or else is cut into very minute particles; furthermore, snuff is designed for use in the nose, with the exception of a very few brands that are used more in the mouth than in the nose."

He testified 'that he is familiar with snuffs, and can see no resemblance in "W-B Fine Cut" to snuff; that this tobacco consists of long fibers, which is never used in snuff.

A large number of other tobacconists, of great experience in the manufacture and sale of chewing tobacco, testified to the same effect, among them the presidents of the Lorrillard Tobacco Company, the American Tobacco Company, and the Liggett & Myers Tobacco Company.

Over 100 citizens of the state of North Dakota, some of them wholesale, and others retail, dealers in tobacco, many others users of chew-

ing tobacco, testified that this is not a snuff, neither adapted, nor capable of being used, as snuff, but that it is a fine cut chewing tobacco, and adapted only for such use as any other fine cut chewing tobacco, consisting of the shredded leaf; that the cut is about the same as usual with the fine cut chewing tobacco used in the state of North Dakota.

On behalf of the defendant only three witnesses testified. Only one testified that he has used this tobacco as a snuff, and in his opinion it could only be intended for that purpose. The second witness was the chemist of the defendant's department, who testified as to the chemical analysis, which, as stated hereinbefore, counsel for the defendant treat as immaterial. The third witness was the defendant himself. His testimony is in the form of an ex parte affidavit. He merely gives his opinion and his belief that this tobacco is similar to that of "Copenhagen," and "Right Cut," declared in State v. Olson to be a snuff within the meaning of the statute. He bases that belief upon the analysis made by the chemist, and, comparing it with the analysis made of "Right Cut," he expresses his belief that this tobacco was intended by the plaintiff to take the place of "Copenhagen," and "Right Cut," to be used as a snuff. The test laid down in State v. Olson is:

"We hold, not that all other fine cuts shall be excluded (from the provisions of the act), but only those fine cuts which are cut so fine or otherwise manufactured so that their natural use is upon the gums, as between the lips and the gums, which use involves no mastication," the court declares within the prohibitions of the statute.

However, for the purposes of this case, the proof establishes beyond a doubt that this tobacco is intended to be used by mastication, and not to be used through either the nose or by placing it in the mouth for absorption. The fact that one witness was found who used it as a snuff cannot overcome the overwhelming testimony introduced by the plaintiff on that point.

We are convinced that the court below erred in dismissing the bill, and the case is reversed and remanded, with directions to grant the injunction as prayed in the bill.

It is so ordered.