BENEDICTO, Treasurer, v. PORTO RICAN AMERICAN TOBACCO CO.

(Circuit Court of Appeals, First Circuit. March 19, 1919.)

No. 1368.

STATUTES ☞110½(1)—SUBJECT AND TITLE—INSPECTION LAW—REVENUE PROVISION.

Under the Organic Law of Porto Rico, Jones Act, § 34 (U. S. Comp. St. 1918, § 3803n), inhibiting a bill containing more than one subject, which shall be clearly expressed in the title, and providing that an act embracing a subject not expressed in the title shall be void as to such part, Act Porto Rico Dec. 3, 1917, entitled "An act to amend" Act March 11, 1915, "entitled an act to protect Porto Rican cigars from misrepresentation," by providing for inspection, and issuance of stamps of guaranty, is void as to section 3, which, contrary to the title, intentionally converts what was simply an inspection law into an inspection law and a revenue law, by providing fees for guaranty stamps, which will yield large surplus revenues.

Appeal from the District Court of the United States for the District of Porto Rico; J. Hamilton, Judge.

Suit by the Porto Rican American Tobacco Company against Jose E. Benedicto, Treasurer of Porto Rico. Decree for plaintiff, and defendant appeals. Affirmed.

Col. Edward S. Bailey, Asst. Judge Advocate General, War Department, of Washington, D. C. (Howard L. Kern, Atty. Gen., of Porto Rico, on the brief), for appellant.

H. L. Brown, of New York City (A. H. Burroughs, of New York City, and J. H. Brown, of San Juan, Porto Rico, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This an appeal from an interlocutory decree of the District Court of the United States for the District of Porto Rico granting a temporary injunction restraining the defendant below, who is treasurer of Porto Rico, from seizing cigars or little cigars of the plaintiff below, found in unstamped packages, and from prosecuting the plaintiff or any of its officers by reason of omitting to affix guarantee stamps on packages containing cigars and little cigars before exporting the same or removing them from its factory for consumption in Porto Rico.

The plaintiff is a New Jersey corporation engaged in the manufacture of cigars, little cigars, and cigarettes in Porto Rico, and has there invested in its plant, machinery, and land more than $5,000,000. Its average weekly output in its Porto Rican factories is about 4,000,000 cigars and 1,500,000 little cigars. More than 90 per cent. of its cigars and practically all of its little cigars are exported to the United States. The cigars are packed and sold in boxes containing from 5 to 50 each; the little cigars, in boxes of 10 each.

The Legislature of Porto Rico passed an act approved on December 3, 1917, entitled:

"An act to amend an 'act entitled an act to protect Porto Rican cigars from fraudulent misrepresentation, by providing for adequate expert inspection, and the issue of stamps of guarantee covering the origin of tobacco used in the manufacture of such cigars, intended for exportation and for other purposes,' approved March 11, 1915."

This act requires the treasurer of Porto Rico to furnish to the manufacturers of cigars or exporters of leaf tobacco stamps to be known as guarantee stamps for cigars intended for exportation or consumption in Porto Rico and for leaf tobacco for exportation, and said—

"stamps shall be necessarily affixed to each original box or package, regardless of its capacity, so as to be visible to the consumer before they are removed from the place of manufacture or place of preparation, for exportation, or consumption in Porto Rico."

See section 2.

In section 3 it is provided that—

"The denomination of each guarantee stamp for original boxes or packages containing cigars for export or consumption in Porto Rico shall be one cent each, and twenty-five cents each for packages containing leaf tobacco, scraps or stripped tobacco for export."

The defendant construes this act to cover the plaintiff's little cigars and to require a one-cent stamp to be affixed to each box of 10 little cigars. The act so construed throws upon the plaintiff an expense of $1 per 1,000 for its little cigars, amounting to $125,000 a year for stamps on little cigars alone. The little cigars are mostly tobacco cigarettes, and are claimed by the plaintiff to differ radically from cigars in size, shape, contents, and cost. The act also requires a stamp to be affixed to each box of from 5 to 50 cigars, which imposes upon the plaintiff for stamps a cost of from 25 cents to $2 per 1,000 cigars. The total expense to the plaintiff of the act as construed by the defendant is not less than $150,000 per year.

Section 1 of the act provides for the employment of three additional internal revenue agents, who shall be tobacco experts, at salaries of $1,500 each per annum, charged with the duty of registering brands of cigars manufactured in Porto Rico, of securing and preserving statistics in relation to leaf tobacco grown in Porto Rico and exported therefrom, as well as the inspection and examination of all tobacco on the premises of manufacturers of cigars and cigarettes for the purpose of preventing and detecting fraudulent use of guarantee stamps issued for cigars manufactured in Porto Rico, and for the purpose of detecting in the exportation of cigars or leaf tobacco such as are wrongly marked, misbranded, or falsely advertised as Porto Rican.

Although the aggregate salaries of the three inspectors of internal revenue agents provided for is only $4,500, the defendant claims that the total annual expenditure entailed by the enforcement of the act will somewhat exceed $21,500.

The tobacco business is one of the chief industries of Porto Rico, and statistics were available to the Legislature before the passage of

the amended act from which the approximate amount of revenue derivable under the provisions of the act could be easily ascertained. The plaintiff alleges, and on this record it must be taken as established, that the Legislature intended to realize under this act a revenue of at least $80,000 above the expense of collection.

The plaintiff has invested a large part of its capital in various brands of little cigars, and claims a trade and good will therein worth $500,000. The plaintiff's little cigars are sold mainly to dealers and distributors in the United States at prices ranging from $9 to $13 per thousand. The cost of $1 per thousand for stamps required by this act represents from 8 per cent. to 11 per cent. of the wholesale price, and is alleged to be in excess of the plaintiff's profit on such sales. On Porto Rican tobacco used by the plaintiff's competitors in the United States and exported by the bale, such competitors would have to pay for stamps only 25 cents on each bale, from which 16,000 to 18,000 little cigars could be manufactured. But the stamps on a like number of little cigars manufactured by the plaintiff in Porto Rico, for sale in competition with manufacturers in the United States using similar tobacco, would be more than 50 times the stamp charge imposed under this act on the tobacco exported by the bale and manufactured in the United States. The result, as the plaintiff claims, will be, if the stamp charge is continued, to destroy its business, good will, and property in its brands of little cigars, worth at least $500,000.

Shortly after this act became operative, the defendant notified the plaintiff that, if it failed or refused to affix stamps both to its packages of cigars and little cigars, he would, under the provisions of the act, seize and confiscate them and institute criminal prosecution besides. On March 3, 1918, the defendant threatened to seize and confiscate, at San Juan, 72 cases, containing 765,000 little cigars intended for shipment from San Juan to New York, unless stamps were affixed thereon. The plaintiff thereupon affixed said stamps, under protest, in order to ship these little cigars to New York. The defendant actually seized 15,000 cigars and little cigars which had been sold and delivered by the plaintiff to local dealers in San Juan without stamps, and threatened criminal prosecution for violation of the act. The plaintiff, claiming that the stamp charge was entirely confiscatory as applied to the little cigars, and that the act was being wrongly construed by the defendant, refused to attach guarantee stamps. Thereupon, on April 3d, the defendant seized some 10,000 cigars and 10,000 little cigars intended for shipment from San Juan to New York, and 2,000 little cigars which had been sold to local dealers, and threatened criminal prosecution. Other facts are alleged showing disorganization of plaintiff's business by the defendant, and irreparable injury done or threatened, or both. The bill was filed on April 6, 1918, and supported by affidavit. A restraining order was issued on the same day. On April 8, 1918, the defendant appeared specially by the Attorney General of Porto Rico, and by a special motion urged that the proceedings should conform to section 266 of the Judicial Code of the United States (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. § 1243]). This motion was denied on April 29, 1918, with an

opinion. On April 26, 1918, the defendant appeared specially and by special answer set up that the bill was in reality against the people of Porto Rico and that the court was therefore without jurisdiction. In substance the defendant either pleaded ignorance or admitted the material allegations of the bill.

The defendant's justification of his proceedings was supported by an affidavit of himself and of one Rivera, an internal revenue agent. The counter affidavit of one Toro, the president of the plaintiff company, was filed on May 20, 1918. On August 26, 1918, the District Judge, in a careful opinion, sustained the jurisdiction and ordered a preliminary injunction issued substantially as prayed for.

The plaintiff's chief contentions, all in effect sustained by the District Court, are as follows:

"(1) That the act is void, because it violates the provisions of the Organic Law of Porto Rico as to entitling—in that while the title of the act gives notice of an inspection purpose only, the act is in fact essentially a tax measure, and extends to cigars for local consumption and to export leaf while the title is limited to cigars for export.

"(2) That the tax imposed under the guise of inspection deprives plaintiff of its property without due process of law, and denies it the equal protection of the law.

"(3) That the act unduly burdens interstate commerce, and is also void because it imposes a tax on exports in violation of the Organic Law, and otherwise exceeds the powers granted the local Legislature by the Organic Act."

It is manifest that the defendant's actual and threatened interference with the plaintiff's business and property will, if wrongful, do the plaintiff irreparable injury, for which it has no plain and adequate remedy at law. If the defendant's course is not justified under the statute, the plaintiff, a citizen of New Jersey, is entitled to equitable relief as against the defendant. Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Weyman-Bruton Co. v. Ladd, 231 Fed. 898, 146 C. C. A. 94. The suit is not one against the people of Porto Rico. Philadelphia Co. v. Stimson, 223 U. S. 605, 620, 32 Sup. Ct. 340, 56 L. Ed. 570, and cases cited.

The Legislature of Porto Rico derives its powers under a grant from Congress, now and at the time of the passage of the act in question from the Jones Act of March 2, 1917 (39 Stat. 951, c. 145 [Comp. St. 1918, §§ 3803a–3803z]). It has no powers except those granted expressly or by necessary implication by Congress. In section 34 of the Jones Act the following provision appears:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

This provision is found in many state Constitutions; it must be given a reasonable, although not a narrow or technical, construction. Carter County v. Sinton, 120 U. S. 517, 7 Sup. Ct. 650, 30 L. Ed. 701; Jonesboro City v. Cairo & St. Louis R. R. Co., 110 U. S. 192,

4 Sup. Ct. 67, 28 L. Ed. 116; Fish v. Stockdale, 111 Mich. 46, 69 N. W. 92; State v. Tibbets, 52 Neb. 228, 71 N. W. 990, 66 Am. St. Rep. 492; Henderson v. Insurance Co., 135 Ind. 23, 34 N. E. 565, 20 L. R. A. 827, 41 Am. St. Rep. 410; Richard v. Stark County, 8 N. D. 392, 79 N. W. 863; N. W. Manufacturing Co. v. Wayne Circuit Judge, 58 Mich. 381, 25 N. W. 372, 55 Am. Rep. 693; Lacey v. Palmer, 93 Va. 159, 166, 24 S. E. 930, 31 L. R. A. 822, 57 Am. St. Rep. 795.

The title to the Act of December 3, 1917, is:

"An act to amend an act entitled 'An act to protect Porto Rican cigars from fraudulent misrepresentation, by providing for adequate expert inspection, and the issue of stamps of guarantee covering the origin of tobacco used in the manufacture of such cigars, intended for exportation, and for other purposes,' approved March 11, 1915."

It purports to amend sections 1, 2, 3, and 6 of the Act of March 11, 1915. Referring, for substance, to the Act of March 11, 1915 (Laws of Porto Rico of 1915, No. 31, p. 60), we find in sections 1, 2, and 6 provisions for inspection, slightly different in scope and in some matters not now material, from the provisions contained in the Act of December 3, 1917. But section 3 is radically changed. In the old act it reads:

Section 3: "No charge shall be made for guarantee stamps to be furnished to cigar manufacturers under the provisions of this act."

In the amended Act of December 3, 1917, it reads:

Section 3: "The denomination of each guarantee stamp for original boxes or packages containing cigars for export or consumption in Porto Rico shall be one cent each, and twenty-five cents each for packages containing leaf tobacco, scraps or stripped tobacco for export."

It is this radical change in section 3 that throws an expense or tax upon the plaintiff of approximately $150,000 a year.

The plaintiff's claim is that this change in section 3 makes the amended act not only an inspection act, but a revenue act; that the title of the amended Act of December 3, 1917, gives no notice of a purpose to raise revenue, and that the revenue feature of the amended act is therefore invalid under the quoted provision from section 34 of the Organic Act.

Added emphasis is given to this claim—that the title gave no notice to it and other parties affected by the proposed tax—by the deposition of its president to the effect that he keeps himself acquainted with—

"proposed legislation in the Legislature of Porto Rico and for such purpose obtains copies of the bills presented in either branch of the Legislature; that from the title of the Act No. 50, approved December 30, 1917, deponent had no notice that the bill which resulted in the said law contemplated a tax or revenue measure; that if deponent had had any reason to believe or suspect from the title of said bill, which was identical with the act referred to, that a revenue law was under consideration, he would have asked for a hearing before the proper committees of the Legislature, to show that the tax resulting from the provisions of such bill and law was destructive to the interests of plaintiff corporation."

It is fair inference that, if the facts now before the court had been before the Legislature, no such act would have been passed. At any

rate, we are not warranted on this record in holding that the Legislature's failure to comply with the express requirements of the Organic Act was the cause of merely theoretical or hypothetical damage to the plaintiff. It is not improbable that the Legislature would, on the facts now shown, have regarded the act as inconsistent, not only with the plaintiff's rights, but with the general public interest of Porto Rico, including therein the continued prosperity of tobacco manufacturing in the island of Porto Rico, now apparently greatly endangered by the discriminatory tax imposed upon manufactured tobacco as compared with tobacco exported in bales.

We think the plaintiff's first contention must be sustained.

Inspection laws are a well-recognized type of legislation. Foote v. Maryland, 232 U. S. 494, 34 Sup. Ct. 377, 58 L. Ed. 698; Turner v. Maryland, 107 U. S. 38, 2 Sup. Ct. 44, 27 L. Ed. 370; Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455.

Inspection necessarily involves expense, and the Legislature is, within rather wide limits, given discretion to fix inspection fees adequate to cover the expense. Red "C" Oil Co. v. North Carolina, 222 U. S. 383, 393, 32 Sup. Ct. 152, 56 L. Ed. 240; Patapsco Guano Co. v. North Carolina, 171 U. S. 345, 18 Sup. Ct. 862, 43 L. Ed. 191. But if, under the guise of imposing inspection fees, the Legislature has really enacted a revenue law, then the law ceases to be merely an inspection law; it becomes also a tax or revenue law, and its validity or constitutionality must be determined on principles other than those applicable to inspection laws. Foote v. Maryland, supra; Patapsco Guano Co. v. North Carolina, 171 U. S. 345, 18 Sup. Ct. 862, 43 L. Ed. 191; Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; Savage v. Jones, 225 U. S. 501, 525, 32 Sup. Ct. 715, 56 L. Ed. 1182.

The Act of December 3, 1917, is plainly labeled an inspection law, and only an inspection law It is in fact, and on this record it must be held that it was intended by the Legislature to be, also a revenue law.

It is not disputed that the tobacco industry is one of the chief industries of Porto Rico, and that statistics with relation thereto were readily available to the Legislature which enacted this law. The plaintiff alleges, and supports the allegation by affidavits, which are not contradicted, that the Legislature expected to realize at least $80,000 a year as revenue through the amendment of the old inspection law.

As the act was intentionally made a revenue measure, the cases of accidental excess returns from inspection fees are not in point. Patapsco Guano Co. v. North Carolina, 171 U. S. 345, 18 Sup. Ct. 862, 43 L. Ed. 191; Red "C" Oil Co. v. Board of Agriculture (C. C.) 172 Fed. 695. There is no substantial denial of the plaintiff's claim that if the act is permitted to be enforced the plaintiff alone will pay an annual tax of about $150,000 a year. It is in effect admitted that the outside limit of expense under the act is $21,500. The old Act of March 11, 1915, appropriates $12,000 for salary and other incidental expenses of the act.

That the claim of $150,000 a year expense to the plaintiff alone is not merely prophetic is shown by the undisputed fact that in the period between March 1, 1918, and about April 13, 1918, the plaintiff was required to purchase about $12,000 worth of stamps, or at the rate of about $2,000 a week. The plaintiff claims this expense to be less than the average throughout the year; there is certainly nothing in this record to indicate that it is below the average.

The result is we must hold that the amendment of December 3, 1917, made the old inspection law into an inspection law and a revenue law; that the bill thus contained "more than one subject"; that the new subject of revenue provision was not "clearly expressed in the title"; and that the act is void as to the revenue features not so expressed, because ultra vires the Porto Rican legislative powers.

Other grounds of the decision below, ably argued by learned counsel, we find no occasion to consider. No opinion is expressed as to whether the act in question interferes with interstate commerce, or whether the plaintiff is, under the act, deprived of its property without due process of law.

We affirm the decision of the court below on the single ground that the act of the Porto Rican Legislature is, as to the revenue features of the act under the quoted provision of the Organic Act, invalid. As this court has decided in No. 1374, Benedicto v. West India & Panama Tel. Co., Ltd., 256 Fed. 417, that section 266 of the Judicial Code, which requires three judges to sit in injunction cases involving the alleged unconstitutionality of a state statute, does not apply to equity procedure in Porto Rico, we have no occasion to consider it here. Moreover no question of unconstitutionality is involved in this case, as we have dealt with it.

Decree affirmed, with costs.