# SOCIETÉ ANONYME DE SUCRERIES DE SAINT JEAN

*v.*

# JUAN CALDAS, FINANCE COMMISSIONER.

San Juan, Equity, No. 1061.

## MUNICIPAL TAXATION.

Municipal Taxation—Jurisdiction.

1. The Federal court may enjoin taxation which is unconstitutional without requiring payment and suit to recover.

Municipal Taxation—Municipalities.

2. The right of taxation may be delegated to municipalities,

Taxation—Classes.

3. Taxes may be divided into property, license, and excise, but whatever it may be, it must, under the Porto Rican Organic Act, be laid uniformly.

NOTE.—On delegation of power of taxation to municipalities, see note in 15 L.R.A.(N.S.) 62.

Societé Anonyme de Sucreries v. Caldas.

Taxation—Not Delegated to Municipality.

> 4. The United States, inheriting the Spanish centralized policy as to Porto Rico, provided that taxation must be collected by the insular government and the proceeds divided among municipalities.

Interstate Commerce—Tobacco before Shipment.

> 5. The fact that tobacco is raised for shipment to New York does not make it subject to interstate commerce rules until it has actually started on its journey.

Taxation at its Source—Colonos.

> 6. Quære, as to whether the law can compel a factory to pay tax due by its customers, colonos, and charge to the customer.

Opinion filed April 23, 1921.

---

*Mr. H. G. Molina* for plaintiff.

*Mr. Miguel Guerra* for defendant.

HAMILTON, Judge, delivered the following opinion:

The plaintiff operates a sugar central or factory in the municipal district of Caguas, Porto Rico. On January 14, 1920, the municipal assembly of Caguas adopted an ordinance for a special tax for the year 1920 of 1 per cent on the value in the market on each quintal or hundred pounds of sugar manufactured in any central dedicated to the manufacture of sugar in this municipality, with certain provisions as to how it was to be assessed and collected by the month. The municipal commissioner of finance was authorized to investigate returns made by the central. The fund realized was to be used for paving, preparation, and repairs of streets of the city and municipal roads and other work of urgent character. Fine and imprison-

Societé Anonyme de Sucreries v. Caldas.

ment are provided for false reports, violation, or delay. The bill in this case, filed March 31, 1921, alleges that the plaintiff operates the only factory in this district and that this tax was aimed at plaintiff alone, and that plaintiff already pays a property tax of $1.20 per cent to the Insular treasury, of which 90 per cent goes to the municipality of Caguas, and also pays a license tax under the local law of March 28, 1914.

It is alleged that the tax in question is laid by virtue of § 49 of the Act of Porto Rico, ¶ f, as follows: "Any other impost, excise, or tax that may be levied by two thirds of the members of the municipal assembly, provided the object or matter of taxation is not also the object or matter of any Federal or Insular tax."

A restraining order was issued upon this bill and a motion to dismiss has been filed and argued setting up that the bill is without equity. The bill and argument set up a number of supposed defects in the ordinance, and the matter was submitted for decision.

1. A preliminary question is as to the jurisdiction of this court to enjoin the collection of taxes. Even where it exists it is a duty which the court looks into narrowly before performance; for taxation is the life blood of a sovereign. It is generally preferable to allow a tax to be levied and collected and then a suit brought to recover it back, for this affects only the persons in question, while an injunction may tie up the whole machinery of government. Nevertheless, where a tax offends a constitutional requirement or a provision of the Organic Act, which is the Constitution for Porto Rico, the tax is in effect void and no reason is perceived why the taxpayer must be put to the necessity of making a payment at all, merely because it is

demanded under the veil of official authority. This **must** be accepted as established law in this court. Benedicto v. Porto Rican American Tobacco Co. 167 C. C. A. 550, 256 Fed. 422, 425; Bouret v. Benedicto, 11 Porto Rico Fed. Rep. 249; Camunas v. Porto Rico R. Light & P. Co. 272 Fed. 924, wherein the circuit court of appeals reversed its decision in the case of Camunas v. New York & P. R. S. S. Co. 171 C. C. A. 76, 260 Fed. 40, and thus in effect conforming to the decision rendered by the Porto Rico Federal court on this point in both cases.

2. Under the Jones Act of March 2, 1917, the people of Porto Rico are given extensive powers, in some respects equal to or even greater than those of a state in the Union, although Porto Rico has not been incorporated into the Union. Amongst these powers is that of taxation, to which the only limit is affixed that in § 2 it is provided "that the rule of taxation in Porto Rico shall be uniform." And § 3 of the Jones Act provides: "Taxes and assessments on property, internal revenue, and license fees, and royalties for franchises, privileges and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Porto Rico." [39 Stat. at L. 953, chap. 145, Comp. Stat. § 3803 aaa, Fed. Stat. Anno. Supp. 1918, p. 610.]

There can be no question also that a state or other sovereign, including Porto Rico, may delegate to municipalities the right of taxation, subject to the provisions of the Constitution or of the Organic Act. The people of Porto Rico have delegated such power to municipalities by different laws in the past, as in the

act found in Compilation of Porto Rico 1911, § 1869, being § 70 of the Municipal Law of 1906.

3. The World War gave a great extension to the law of taxation, many subjects being covered which before had never been dreamed of. The old classification of taxation into property, license, and excise tax would seem still to be controlling. The local municipal law grants to municipalities the right to lay certain occupation taxes, which have already been paid by the plaintiff. A full property tax has also already been paid by the plaintiff. So that it would seem that the tax now complained of in order to be valid must be an excise tax. Otherwise it would be an object or matter of taxation already the object or matter of Federal or Insular tax, and therefore not within the scope of municipal powers under § 49 of the Municipal Act of July 31, 1919. Wide scope has been given to the subject of excise taxes. What has been said of an occupation tax applies to taxation in general, that it knows no limit other than the necessity of the public treasury, and the discretion within the constitutional limits of the taxing power. 4 Dill. Mun. Corp. 2463.

The definition of an excise tax gives an idea of its nature, that is to say, it is something cut off from the price paid on the sale of goods as a contribution to the support of government. 19 R. C. L. 947, § 246. The tax in question may have been intended as an excise tax, because it is imposed upon the proceeds of sales, although it is as a matter of convenience collected afterwards by the month. Suppose this to be true, nevertheless under the Organic Act all taxes in Porto Rico must be uniform. If the municipality has the right to lay a tax of 1 per cent it has the right to lay a tax of a larger percentage; for, as Chief

Société Anonyme de Sucreries v. Caldas.

Justice Marshall says, the right to tax is the right to destroy. In this case the complaint is not as to the percentage. That may for present purposes be conceded to be reasonable. The question is whether it is uniform. It was conceded on the argument that several municipalities have laid such a tax, but it follows that a great many have not laid such a tax. So that the result at present is that the tax is not uniform, because it is laid by different municipalities, having different needs, and different ideas on the subject of taxation. The result, therefore, is that so far as the plaintiff is concerned taxation is not uniform because of the tax in question, whether it be called license, occupation, or property tax. This offends the requirement of the Jones Act as to uniformity. If the legislature has the right to delegate this kind of taxation to municipalities, it must see that the right is uniformly exercised. Otherwise it is putting one enterprise at a disadvantage as compared with another, and thus offending the requirement as to uniformity.

4. It is conceded that the taxation in question was laid under § 49 (f) of the municipal law, which allows local taxation to be levied, provided that the object or matter is not also object or matter of Federal or Insular tax. This is a new provision in the municipal law and does not occur in previous municipal laws. Can it be sustained?

There is no doubt of the principle that a sovereign can delegate to municipalities the right of taxation, within certain limits. This is contained in the Jones Act, § 3, applying to Insular and municipal governments, but distinctly providing that such taxes respectively "may be provided and defined by the legislature of Porto Rico." The tax in question is not provided and defined by the legislature. On the contrary it was devised

Societé Anonyme de Sucreries v. Caldas.

by the local authorities of Caguas, and has occurred so far only to a few other municipalities in Porto Rico. It is an extension of local self-government to local taxation for the benefit of municipalities. This is not the plan of the Jones Act. The Spanish method of government was a strong central government, absolutely controlling all local affairs. It is quite true that the American theory is otherwise, but in gradually introducing American institutions into Porto Rico and gradually adapting the people of Porto Rico to American institutions it has seemed wise to confer more power upon the Insular government than has generally been the case in the States. As to taxation, therefore, it is provided that the legislature fix the subjects, objects, and methods of taxation for all purposes, everything going into the Insular treasury and being then paid divided in certain proportions between the Insular and local treasuries. That would seem to be the reason why it is declared that taxation shall be provided and defined by the legislature of Porto Rico. It would appear to be a very wise provision, designed to meet exactly the conditions which might arise, and the conditions which have in fact arisen in the case at bar and in other municipalities. It would seem that the legislature cannot under the Jones Act delegate to local municipal councils the taxing power which is expressed in this § 49 (f).

5. The point is raised that the tax in question is a violation of interstate commerce in that the sugar is sold in New York and not in Caguas. This point does not seem to be well taken. Interstate commerce affects all property when it gets in transit, but in order to be an object of interstate commerce the goods in question must start on their interstate journey. The fact that an article is manufactured for the purpose of being shipped to

another state does not make it a subject of interstate commerce. It is subject to all local police and tax regulations until it starts on its journey. The exact line which determines this it is sometimes difficult to fix; but the manufacture of sugar and its storing in the factory certainly do not pass over the line and make the sugar a subject of interstate commerce. When it is within the reach of a steamer's tackle it has so started, as was determined by this court in the Porto Rican American Tobacco Co. Case. Whether this may not also be true when it is loaded on trucks for the purpose of transportation to the wharf need not be decided. The case at bar is of sugar still within the factory, if it is to be regarded as affecting the sugar at all, and not as an excise tax. Gray, Limitations of Taxing Power, 474, § 938; 17 Am. & Eng. Enc. Law, 70; Coe v. Errol, 116 U. S. 517, 29 L. ed. 715, 6 Sup. Ct. Rep. 475. Taxation of any kind is apt to affect interstate commerce, and so a more accurate limitation must be drawn, and that limitation is delivery of the goods to the carrier or otherwise starting on the interstate journey. Manufacture belongs to the internal economy of a state. Commerce succeeds manufacture and is not a part of it. United States v. E. C. Knight Co. 156 U. S. 1, 39 L. ed. 325, 15 Sup. Ct. Rep. 249.

6. Other defects are claimed in regard to this tax. Thus it is claimed that the municipality cannot compel the taxpayer to become the collector of the municipal tax, as is required when the municipality is to retain from its colonos the amount due under this ordinance upon their sugars in the hands of the central. That this is vexatious and gives rise to misunderstandings between the factory and its patrons is probable. It would seem, however, to be a question of fact which may need proof.

Societé Anonyme de Sucreries v. Caldas.

The principle of paying taxation at the source was largely adopted during the World War and cannot be said to be wrong in principle. It is nevertheless true that a municipal corporation does not have all the powers of a sovereign and municipal ordinances may be declared void when unreasonable. This particular point may be left to the proof.

It is difficult to discuss the question of motion to dismiss without discussing at the same time the main equities of the bill, nor is it necessary to draw a distinct line between the two. Without discussing all the points, it would seem that the bill presents a number of grounds which give jurisdiction to this court, and for that reason the motion to dismiss must be denied.

It is so ordered.