José LABOY MONTES ET AL., Plaintiff and Appellants *v.* CORPORACIÓN AZUCARERA SAURÍ & SUBIRÁ, Defendant and Appellee.

No. 9134. Argued May 23, 1945.—Decided November 27, 1945.

*R. Hernández Matos* for appellants. *Francisco Parra Capó* and *Leopoldo Tormes García* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

José and Juan Laboy Montes were employed by Corporación Azucarera Saurí & Subirá, a corporation, from the time it began to do business in 1919. They both started earning a weekly salary of $10 and after various increases, upon retiring on February 20, 1944, the former was earning $50 a week as factory superintendent and the latter, upon retiring on July 15 of that same year, was earning $25 a week as overseer (*mayordomo de plaza*).

The evidence disclosed that the wages earned by appellants included the seven days of the week and they admit that appellee always paid them punctually. Their only contention is that according to § 553 of the Penal Code, sugar factories are exempt from closing on Sunday and, since petitioners performed their work in defendant's sugar factory, each of them had a right to one full day of rest for every six days of work; that although their labor contract included the seven days of the week, yet, they had not been granted the one day of rest to which they were entitled, wherefore they claim the value of the work performed by them during those days of rest. The municipal court rendered judgment for plaintiffs, but it was reversed by the district court on the ground that the preponderance of the evidence showed that claimants never worked on Sundays. Since the claim involved was not for agricultural wages, the petitioners took the present appeal.

■ Although the workmen allege in their complaint that they worked every day during the whole year, however, the evidence reveals that during the dead season plaintiffs did not work on Sundays. They so admit it in their briefs when they say:

"Once it is shown that petitioners worked for defendant on a weekly basis, during the grinding season, the seven days of the week, and *during the dead season six days,* (the district court) had no other alternative than to sustain the complaint and *grant compensation in accordance with the evidence.*" (Appellants' brief, p. 93.) (Italics ours.)

We can not agree with the lower court in its conclusion to the effect that the evidence also shows that during the grinding season the petitioners did not work on Sundays. The latter's evidence reveals that they worked every day of the week during the grinding season and defendant's evidence also tends to support this contention, as is shown by the following statements of defendant's manager, who testified thus:

"Q. Did these two gentlemen (the claimants), work on Sundays during the dead season?—A. Very seldom.—Q. And during the grinding season?—A. Most of the time they did, but there were times when no work was done on Sunday. (Tr. of Ev., p. 197.)

"Q. Did you allow them a day of rest? During the grinding season could they go out on Sundays?—A. They could go wherever they pleased. They had sufficient authority for a good many things.— Q. For example, on Sundays, could they really leave the work without causing any prejudice thereto?—A. If any grinding had to be done on Sunday and one of them wanted to go out, he could make arrangements and leave.—Q. Could you recal now on what Sundays they went out?—A. No." (Tr. of Ev., p. 209.)

It seems clear that during the grinding season plaintiffs worked on Sundays. It is true that if they wished to go out on a Sunday they could do so, but they had to leave matters so arranged that their absence would cause no hindrance to the work. This being so, the trial court erred in appraising the evidence in the sense that plaintiffs did not work on Sundays.

 Since the evidence discloses the duration of each grinding season, it could be feasible to compute the days of rest that they worked. But since defendant has challenged the constitutionality of the Act under which the employer of certain enterprises is bound to grant its workmen or employees one day of rest at full salary for every six days of work, and should this Act be held unconstitutional, plaintiffs would not be entitled to recover on their claims, we are bound to pass upon the validity of the Act.

Defendant alleges that the Act is unconstitutional because: (a) there is a fatal variance between its title and its contents; and (b) because with regard to the allowance of one day of rest at full salary. the corporation is denied the equal protection of the laws and is deprived of its property without due process of law.

In *Cía. Popular* v. *District Court*, 64 P.R.R. 365, these two questions were raised against that same Act and ably argued

by plaintiffs' attorneys. In that case we did not pass upon the constitutionality of the Act because it could be disposed of, as it was, on other grounds in favor of the Compañía Popular. In this case, however, we are constrained to pass upon the validity of the Act.

In *Rodríguez* v. *District Court*, 60 P.R.R. 894, we had the opportunity of considering, in regard to another statute, the constitutional provision relating to the titles of acts. We stated therein:

"Section 34 of our Organic Act provides that 'No bill, except general appropriation bills, shall be passed containing more than one subject, *which shall be clearly expressed in its title*; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed.'

"If we stop to examine the above-transcribed constitutional provision, we will notice that it requires that the subject of an act must be *clearly expressed* in its title, and that although it makes the exception that if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expresed. The purpose of the title of an act is to apprise the public in general and the legislators in particular of the subject covered by the act, so that the former may oppose its approval if they consider the same to be prejudicial to their interests, and the latter may be in a position to cast their votes aware of the subject legislated upon. The necessity that the title of an act should faithfully reflect the contents of the same is clearly inferred from another subdivision of the said § 34, *supra,* which reads thus:

"'The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the legislature, *after their titles shall have been publicly read,* immediately before signing; and the fact of signing shall be entered on the journal.' (Italics ours.)

"In applying the constitutional provision that we are discussing, the U.S. Circuit Court of Appeals for the First Circuit in the case of *Martínez* v. *People of Puerto Rico*, 46 F. (2d) 427, 429, which originated in this court, said:

"'We do not see how those voting for the act could in any way have been misled by the title.'

"We should not be undestood as holding that the title must contain: a minute description of the act. It is sufficient if it expresses in a general way what is the purpose thereof, *Rodríguez v. P. R. Ry. L., & P. Co.*, 30 P.R.R. 869, provided, of course, that it does not lead to error. As graphically stated in the case last-above cited, the title must be a 'sign post' of what the act contains. See *Posados v. Warner, B. & Co.*, 279 U. S. 340, where construing the clause of the Organic Act of the Philippines which declares that 'no bill which may be enacted into law shall embrace more than one subject, and that subject shall be expressed in the title of the bill,' the Supreme Court of the United States said that the purpose of that constitutional provision 'is to prevent the inclusion of incongruous and unrelated matters in the same measure and to guard against inadvertence, stealth, and fraud in legislation. When bills conform to such requirements, their titles serve conveniently to apprise legislators and the public of the subject under consideration.'"

The Act under discussion is § 553 of the Penal Code. This legal provision originated in an Act of the Legislature of Puerto Rico, approved February 10, 1902, to become effective on March 1st following (Laws and Resolutions Passed by the Second Session of the Legislative Assembly of Puerto Rico, p. 89), whose title reads thus: "An Act Providing for the Closing of Certain Commercial and Industrial Establishments on Sunday After Twelve O'clock Noon, and Fixing Penalties for Infractions of the Provisions Thereof." This Act consists of six Sections. Upon approving the Penal Code on March 1, 1902, to become effective on July 1 of that same year, at noon, the Legislative Assembly incorporated in said Code the full contents of § 1 of the aforesaid Act, under Title XIX "Sunday Closing," the said § 1 thus becoming § 553 of the Penal Code. It reads as follows:

"Sec. 553. That on every Sunday commercial and industrial establishments, excepting public markets, pharmacies, bakeries, hotels, restaurants, cafes, and places where refreshments only are served, excepting also public and quasi-public utilities and works of emergency, necessary to prevent unusual and serious financial loss, shall remain closed and do no business whatever after twelve

o'clock noon. This prohibition shall not, however, extend to theaters and other places devoted exclusively to amusements or to charitable purposes; at all such places it shall be lawful to work at any hour on Sunday, but only in aid of such charitable purposes or amusements.''

The wording of § 553 of the Penal Code in the Compilation of Reviseed Statutes and Codes of Puerto Rico of 1911 is exactly the same as it appeared in the Revised Statutes and Codes of Puerto Rico of 1902.

In 1913, by Act No. 57 of March 13 of that year (Laws of 1913, p. 95) and later in that same year, by Act No. 131 of August 9 (Spec. Sess. Laws, p. 86), and then by Act No. 24 of March 28, 1914 (Laws of 1914, p. 170), § 553 of the Penal Code was amended. The title of the first two amendatory Acts and that of the 1914 Act read, respectively, thus: ''An Act to amend Section 553 of the Penal Code,'' and ''An Act to amend Section 553 and to Reënact Section 554 of the Penal Code.''

Section 34 of the Organic Act provides:

''No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title such act shall be void only as to so much thereof as shall not be so expressed.''

Since the amendments introduced to § 553 of the Penal Code in 1913 and in 1914 were germane to the original subject matter of said Section, the title of said acts complied with the requirements of § 34 of the Organic Act. Upon construing constitutional provisions similar to that contained in § 34 of our Organic Act, it has been held that provided the amendatory matter is germane to the subject expressed in the original act, a title like that of the Acts of 1913 and 1914, complies with the constitutional requirement. *A contrario sensu,* if the amendment is clearly incongruent with or constitutes a complete change in, the subject of the original act, a title like the one quoted would, under these circum-

stances, violate the constitutional provision. *Praetorians* v. *State*, 184 S.W. (2d) 299 (Tex. 1944); *First National Bank of Corvallis* v. *Benton County*, 154 P. (2d) 841 (Or. 1944); *Benedicto* v. *Porto Rican American Tobacco Co.*, 256 Fed. 422 (C.C.A. 1st Cir., 1919) and *Domenech* v. *Porto Rican Leaf Tobacco Co.*, 50 F. (2d) 579 (C.C.A. 1st Cir., 1931).

It was the change introduced by the Act of 1917 that brought about the attack on the validity of a certain portion of this statute. Act No. 26 of November 23 of 1917 (Spec. Sess. Laws, p. 272), entitled "An Act to amend Section 553 of the Penal Code, repeal Section 554 of said Code, and for other purposes," granted Labor Day and the Fourth of July as full days of rest, and it ordered the closing on Saturdays after 9 p.m. instead of 10 p.m. On other days, the establishments not exempted were again required to be closed at 6 p. m. If the contents of said Act of 1917 had been limited to the foregoing provisions, there would be no question that its title complied with the requirements of § 34 of the Organic Act. But the Legislative Assembly did not confine itself in the Act of 1917 to amending § 553 and re-, pealing § 554, as its title indicated; it inserted § 3 which reads thus:

"Section 3.—That employees and clerks of enterprises and establishments not exempted by this act, and who render services on the basis of an annual, monthly or weekly salary, or in any form other than for wages or piece work at a fixed price, shall be entitled to one day of rest for every six days of work, at full salary."[1]

It is worthy of note that § 3 copied above is clearly incongruous with the original subject of § 553 of the Penal Code. Evidently the matter contained in § 3 is of a civil nature and whoever reads the title of Act No. 26 of November 23, 1917, will hardly suspect that a purely civil matter

---

[1] For a study of the evolutive history of § 553 of the Penal Code, see *Parrondo* v. *L. Rodríguez & Co.*, 64 P.R.R. 418, where it was held, among other things, that the word "no" appearing in the above-quoted § 3 is there by error and should be considered nonexistent.

has been inserted in the provisions of the Penal Code. The title of the Act of 1917 does not suggest in any manner whatsoever that the amendment introduced purported to compel an employer to grant his employee one day of rest for every six days of work at full salary.

■ Moreover, the phrase "for other purposes" at the end of the title of the Act of 1917 does not cure the defect pointed out. As stated in 1 Sutherland, Statutory Construction (rev. ed. 1943), § 1714:

"Although frequently used in titles, terms like 'and so forth' and 'and for other purposes,' have little effect on the validity of statutes. While these terms may serve to give notice that matters additional to those specified in the title are contained in the act, they cannot make valid the inclusion of incongruous provisions. Moreover, any provisions that are germane to the general subject may be included without the aid of these catch-all phrases."

Since the subject matter of § 3 is not covered by the title of the Act of 1917, and it being a deviation from the original subject of the Act, we feel bound to hold that said Section violates § 34 of the Organic Act. Since § 3 is void, and it being the source of plaintiffs' claim for compensation for the day of rest which was not granted to them, the judgment appealed from must be affirmed but on different grounds than those expressed by the lower court. .