# CARTER COUNTY *v.* SINTON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

Submitted January 7, 1887. — Decided March 7, 1887.

When the title of a statute of a state clearly and distinctly expresses the whole object of the legislature in the enactment, and there is nothing in the body of the act which is not germane to what is there expressed, the act sufficiently complies with a requirement in the constitution of the State that no law "shall relate to more than one subject, and that shall be expressed in the title;" although some provisions in the act

respecting details in the execution of the purpose .of the legislature may not be expressed in the title.

The act of the legislature of Kentucky of January 30, 1878, respecting the compromise and settlement of the county of Carter with its creditors is not in conflict with the provision in the constitution of the State that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

Carter County in Kentucky under legislative authority subscribed to the capital stock of a railroad company, and issued its negotiable coupon bonds in payment of the subscription. Subsequently Boyd and Elliott counties were created, in each of which were included townships which formed part of Carter County when the subscription was made and the bonds issued, and in each case legislative provision was made for the continuation of the liability of the persons and property set off to the new counties on the subscription. Default being made in the payment of interest, an act was passed in 1878 authorizing the County Court of Carter County to compromise and settle with the holders of the bonds on behalf of Carter County, and on behalf of the parts of the other counties taken from Carter County, and a compromise was made under which new bonds of Carter County and of those parts of each of the other counties taken from Carter County were issued. Default being made in the payment of interest due on these latter bonds, a holder of the coupons brought suit against Carter County to recover on them. *Held:* (1) That the legislature had authority under the constitution of Kentucky to authorize the County Court of Carter County to bind those parts of the counties of Boyd and Elliott taken from Carter County; (2) that under the act of 1878 the County Court of Carter County was authorized to contract for the issue of negotiable bonds of the county and of the parts of the county in order to retire the old negotiable bonds of the county; (3) that in the suit to recover upon the coupons of the new bonds, it was not necessary to make the parts of Boyd and Elliott counties, which had been parts of Carter County, parties to the suit.

THIS was a suit brought against the county of Carter to recover the amount due on certain bonds and interest coupons, issued under the following circumstances: By an act of the General Assembly of Kentucky "to incorporate the Lexington and Big Sandy Railroad Company," approved January 9, 1852, and an act amendatory thereof, approved March 1, 1854, the county of Carter was authorized to subscribe $75,000 to the stock of the company, and to issue its bonds to raise the money to pay therefor. Under this authority the subscription was made and seventy-five bonds of $1000 each issued by the county. These bonds were in the usual form of negotiable

coupon bonds, payable to the order of the railroad company thirty years from date, with interest 'at the rate of six per cent. per annum, semiannually at the Bank of America, New York. The railroad company indorsed them in blank, and all but one afterwards came into the hands of Joseph C. Butler and L. Worthington, citizens of Ohio, as purchasers for value before maturity.

In 1859, after this subscription was made, and while the bonds issued on that account were outstanding, the county of Boyd was created by the General Assembly of Kentucky, which included within its boundaries a part of the original county of Carter. In 1869 the county of Elliott was created, and this took in another part of Carter, but in each of the acts creating the new counties it was provided:

"That nothing in this act shall be construed so as to release the citizens and property now subject, or which may hereafter become subject, to taxation within the boundaries of Carter County, included in the first section of this act, from being held and made liable for the bonds and interest, issued to the Lexington and Big Sandy Railroad Company, as though this act had never been passed."

Default having been made in the payment of interest on the bonds, suits were brought by Butler against Carter County for the recovery of the amount due on coupons attached to the bonds he held. The suits resulted in judgments against the county. Afterwards the following act, approved January 30, 1878, was passed by the General Assembly of Kentucky:

"An Act authorizing the county of Carter, and those parts of Boyd and Elliott taken from Carter County, to compromise and settle with the holders of the bonds and coupons of interest executed by Carter County in its subscription to the capital stock of the Lexington and Big Sandy Railroad Company, and to levy and collect a tax for that purpose.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"§ 1. That power and authority is hereby given to the county of Carter, and those parts of the counties of Boyd and

Elliott taken from Carter County, to compromise and settle with the holders of the bonds and coupons of interest executed by Carter County in its subscription to the capital stock of the Lexington and Big Sandy Railroad Company. Said compromise and settlement shall be made by the Carter County court, composed of the county judge and a majority of the justices of the peace in commission of Carter County, for and on behalf of the county of Carter, and those parts of the counties of Boyd and Elliott taken from Carter County. Said court may make said compromise through a commission appointed for that purpose; but before the same shall become binding on the county of Carter it shall be approved by the Carter County court, constituted as county levy courts are required by law to be constituted. Said court may execute to the holders of said bonds and coupons of interest, severally, the obligations of the county of Carter and those parts of the counties of Boyd and Elliott taken from Carter County in their formation, which shall be signed by the county judge of Carter County, and attested by the clerk of said court. Said obligations shall contain such stipulations as to interest as may be agreed upon by the court and holders of said bonds and coupons of interest, or either of them, but not at a greater rate than six per cent. per annum, payable semiannually. Said obligations shall be due and payable at such times, and be for such amounts, as may be agreed for by the court and holder or holders of said bonds and coupons."

The next three sections of the act contain provisions for the levy and collection of taxes, to pay the interest and principal of the compromise bonds, upon persons and property within the limits of Carter County, as it was when the debt was originally created. The fifth and last section is as follows:

"§ 5. This act shall take effect and be in force from and after its passage; but nothing in this act shall be so construed as to affect or make more valid the bonds and coupons of interest given by Carter County in its subscription to the capital stock of the Lexington and Big Sandy Railroad Company than they were before the passage of this act."

Under the authority of this statute a compromise was made

with the holders of the original bonds, by which the county court of Carter County issued 119 new bonds of the county of Carter and those parts of the counties of Elliott and Boyd taken from Carter County, each for the sum of one thousand dollars, payable to Henry Peachey and Richard O. Butler, executors of Joseph C. Butler, or bearer, with semiannual interest warrants at the rate of six per cent. per annum attached. The principal of the bonds was made payable at different dates.

David Sinton, the defendant in error, purchased nine of these bonds for value before maturity, and five hundred and forty of the coupons, and this suit was brought to recover the amount due thereon. Originally the suit included other bonds and coupons, but, as it was discontinued so far as they were concerned before judgment, no questions arise in this court as to them.

To a petition setting forth the foregoing facts the county demurred: 1, because the petition did not state facts sufficient to constitute a cause of action; and, 2, because the petition shows a defect of parties, plaintiff and defendant. This demurrer was overruled. *Sinton* v. *County of Carter*, 23 Fed. Rep. 535. The defendant then filed an answer, some paragraphs of which were stricken out on motion, and others demurred to, and the demurrer sustained. As no point was made on this branch of the case, a further statement of it is not necessary.

The court gave judgment against the county for $29,121.54, and to reverse that judgment this writ of error was brought.

*Mr. W. Lindsay* and *Mr. A. Duvall* for plaintiff in error.

*Mr. George Hoadly, Mr. Edgar M. Johnson, Mr. Edward Colston, Mr. George Hoadly, Jr.,* and *Mr. James O'Hara,* for defendant in error.

MR. CHIEF JUSTICE WAITE, after stating the facts reported above, delivered the opinion of the court.

The principal points presented by the argument of the plaintiff arise on the demurrer to the petition, and they may be stated thus:

1. The act of January 30, 1878, is void by the constitution of Kentucky, because the subject to which it relates is not clearly expressed in its title.

2. The act is also unconstitutional and void because it vests in the county court of Carter County the power to bind the parts of Elliott and Boyd counties which had been set off from Carter.

3. The act gave no authority to the county court of Carter County to issue negotiable securities which pass by delivery and in the hands of innocent holders are free from defences which would be good as between the original parties.

4. There is a defect of parties defendant, because Carter County is sued alone without joining "those parts of Boyd and Elliott counties taken from Carter."

1. As to the title of the act.

The provision of the constitution of Kentucky relied on is Art. II, § 37, as follows:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

Undoubtedly the design of this provision was, as is said in *Pennington* v. *Woolfolk,* 79 Ky. 20, "to prevent the use of *deceptive* titles as a cover for vicious legislation, by enabling members of the General Assembly to form such opinion of the nature of a bill by merely hearing it read by its title;" but as early as 1859 the Court of Appeals said in *Phillips* v. *Covington & Cincinnati Bridge Company,* 2 Met. (Ky.) 219, 221: "This prohibition should receive a reasonable and not a technical construction; and looking to the evil intended to be remedied, it should be applied to such acts of the legislature alone as are obviously within its spirit and meaning. None of the provisions of a statute should be regarded as unconstitutional where they all relate directly or indirectly to the same subject, have a natural connection, and are not foreign to the subject expressed in its title." This is in accord with the decisions of this court in *Montclair* v. *Ramsdell,* 107 U. S. 147, where we followed the rulings of the Supreme Court of New Jersey upon a similar provision in the constitution of that state; in

*Jonesboro City* v. *Cairo & St. Louis Railroad*, 110 U. S. 192, and *Mahomet* v. *Quakenbush*, 117 U. S. 509, where the constitution of Illinois and the decisions of the Supreme Court of that state were considered; and in *Otoe County* v. *Baldwin*, 111 U. S. 1, which had reference to the constitution of Nebraska and the settled rule of decision in that state; and in *Ashley School District* v. *Hall*, 113 U. S. 135, which arose in Iowa. It is enough if the law has but one general object, and that object is fairly expressed in its title. Cooley on Const. Lim., 1st ed. 144, § 2; 4th ed. 175.

Here the title is " An act authorizing the county of Carter, and those parts of the counties of Boyd and Elliott taken from Carter County, to compromise and settle with the holders of the bonds and coupons of interest executed by Carter County in its subscription to the capital stock of the Lexington and Big Sandy Railroad Company, and to levy and collect a tax for that purpose." This clearly and distinctly expresses the whole object of the legislation, and there is nothing in the body of the act itself which is not in every way germane to what is there expressed. No one interested in the subject matter of the law could be put off his guard by hearing the bill read by its title. True, it does not state that the county court of Carter County is to act as the representative of the parts of Boyd and Elliott counties, as well as the county of Carter, in making the compromise, or that bonds are to be issued for the purpose of carrying it out, but all this is matter of detail, suitable to the single purpose the legislature had in view, namely, a settlement and compromise with the holders of bonds issued by Carter County before its division, and for which the present Carter County and those parts of Boyd and Elliott which were taken from the old county were liable. It is difficult to see how the subject of the legislation could be stated more clearly without making the title of the act " a detailed statement, or an index or abstract of its contents " which all agree is not necessary. *Montclair* v. *Ramsdell*, 107 U. S. 155.

2. The authority of the county court of Carter County to bind " those parts of the counties of Boyd and Elliott taken from Carter County."

If we understand correctly the position of the county as to this branch of the case, it is that the legislature had no power to authorize the county court of Carter County to act for those parts of counties in compromising the old debt for which they were held, because they were no longer parts of that county, and no opportunity was given them to participate in the arrangement. These parts of counties have no separate organization of their own, corporate or otherwise. For all county purposes, except this debt contracted by Carter County when they were included within its boundaries, they are subject to the government of the counties to which they now respectively belong; but for the debt, they still remain a part of Carter. Such is clearly the effect of that provision in the acts establishing the new counties which declared that the liability of citizens and property in the territory set off from Carter for taxation on account of the bonds and interest should continue the same "as though this act had never been passed." Had the acts never been passed, no one would doubt the power of the legislature to give the county court of Carter the authority to make the settlement in the same way now provided for, even though these parts of the county did not have a justice of the peace in commission to take part in the deliberations. And this because the county court was made the agent of the county, and of those whose property was subject to taxation, for the transaction of this business. The legislature might have appointed a commission for the same purpose, or it might have selected any other suitable agency. In order to bind the county or the tax-payers, it was not necessary that the tax-payers should vote on the subject, or that they should participate in an election of the body that was to act in the matter. All that was properly within the discretion of the legislature. No new debt was to be created, and no new subscription to the stock of a railroad company was to be made. All that had to be done was to compromise and settle an existing debt, and to substitute new liabilities on terms to be agreed on for an old one. Certainly it was within the power of the legislature to designate a suitable agency for that purpose, and what could be more suitable than that department of the governing

body of Carter County which was intrusted with the management of its financial affairs? The cases of *Allison* v. *Louisville & Harrod's Creek and Westport Railway Company*, 9 Bush, 247, 253, and 10 Bush, 1; *Scuffletown Fence Co.* v. *McAllister*, 12 Bush, 312; *Cypress Pond Draining Co.* v. *Hooper*, 2 Met. (Ky.) 350; and *Mercer County Court* v. *Kentucky River Navigation Co.*, 8 Bush, 300, referred to in the argument of counsel, all relate to the creation of new liabilities, not to the settlement of old ones.

3. The right to issue negotiable securities.

It is no doubt true that, without sufficient legislative authority, a municipality cannot issue commercial paper, which will be free from equitable defences in the hands of innocent holders, *Claiborne County* v. *Brooks*, 111 U. S. 400; but, in our opinion, that authority was given here. The county of Carter was authorized to borrow money and to issue its bonds therefor to pay its subscription to the stock of the railroad company. This, all agree, was sufficient authority to issue bonds which were negotiable, and the averments in the declaration are that the bonds which were in fact issued had that character. The debt to be compromised, therefore, under the act of 1878, was a debt which had been created by the issue of such bonds, and the authority was to execute to the " holders of said bonds and coupons of interest " " the obligations of said county of Carter and those parts of the counties of Boyd and Elliott taken from Carter County in their formation, which shall be signed by the county judge of Carter County and attested by the clerk of said court." They were to contain such stipulations as to interest, not exceeding six per cent. per annum, and to be made due and payable at such times, as might be agreed on. As the new obligations were to be executed to take up and cancel old negotiable securities to a large amount, and were to be made payable at a future time, there cannot be a doubt of the intention of the legislature to authorize the execution of " obligations " negotiable in form and in law, if necessary to secure a settlement. The authority to include in the obligations such stipulations as to interest as might be agreed on clearly implies authority to

attach interest coupons, and everything indicates a purpose to invest the court with all the powers as to the form of the obligations that were necessary to enable it to meet the requirements of the holders of the outstanding bonds and coupons in this particular.

4. The want of parties.

As we have already said, the parts of Boyd and Elliott counties which are interested in this matter have no separate organization of their own, and they remain for all the purposes of this debt a part of Carter County. A suit against Carter County on the bonds is, therefore, a suit against them, and a judgment against that county will be payable out of taxes collected within the boundaries of the original county under the provisions of the act of 1878.

A suggestion was made in the argument for the county of a variance between the bond described in the declaration and that which was actually issued, but this is a matter which we cannot consider, as there is no copy of the bond as issued in the record.

Another objection is made to the form of the declaration in that it does not meet the requirements of § 113 of the Civil Code of Kentucky, and set out distinctly in separate paragraphs each one of the sixty separate causes of action sued on. The objection cannot be taken by general demurrer, and besides it does not seem to have been made below.

The objection to the action of the court in respect to the answer is so little relied on that it is only necessary to say we see no error in what was done.

*The judgment is affirmed.*