## FOSTER *v.* PRYOR.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 173. Argued and submitted February 25, 1903.—Decided April 6, 1903.

When the difference is deep and radical between two domains in which the same kind of property may be situated, the law which makes them one district for taxation, so that all the property of the same kind in the same district must be taxed alike, and no reasonable distinction be permitted, must itself be so plain and urgent that no other intention can be suggested.

There is no provision in the act of Congress of 1890 organizing Oklahoma, or in the territorial act of 1886, which was violated by the act of 1899, p. 216, Session Laws of Oklahoma, which provides that only taxes for territorial and court funds shall be assessed, levied or collected in any unorganized country, district or reservation attached to any county for judicial purposes, and the effect of which is to tax property in an organized county for more purposes, thereby making a different and higher rate than similar property is taxed in the unorganized territory attached to such county.

THIS is an action to enjoin the payment of certain taxes levied upon property belonging to the appellees (plaintiffs below) and

situated in an Indian reservation within the Territory of Oklahoma. The appellee, Hite, resides in the Ponca and Otoe Indian reservation within that Territory; the Stafford Land and Cattle Company is a corporation organized under the laws of the State of Texas and doing business in the above-named Territory; and the 101 Live Stock Cattle Company is a corporation organized under the laws of the State of Kansas. The appellees, severally, owned large numbers of cattle which were grazing in the Indian reservation, and they were assessed therein for purposes of taxation by the taxing officer of Noble County, to which such reservation had been attached for judicial purposes. The reservation is without the boundaries of Noble County and is not within those of any organized county of the Territory, and it comprises land owned and occupied by Indian tribes consisting principally of wild, unimproved and unallotted land used for grazing purposes. The reservation was duly attached to the county of Noble for judicial purposes, by order of the Supreme Court of the Territory, pursuant to the provisions of section 9 of the act organizing the Territory, approved May 2, 1890, 26 Stat. 81, 85.

By article 6, chapter 43, Session Laws of Oklahoma, 1895, it is provided:

" That section 13, article 2, chapter 70, of the Oklahoma statutes relating to revenue, be and the same is hereby amended so as to read as follows: Section 13. That when any cattle are kept or grazed, or any other personal property is situated in any unorganized country, district or reservation of this Territory, then such property shall be subject to taxation in the organized county to which said country, district or reservation is attached for judicial purposes, and the board of county commissioners of the organized county or counties to which such unorganized country, district or reservation is attached, shall appoint a pecial assessor each year, whose duty it shall be to assess such property thus situated or kept; such special assessor shall have all the powers and be required to perform all the duties of a township assessor, and shall give a similar bond and take the same oath as required of such township assessor, and receive the same fees as a township assessor, and the officer whose duty

it shall be to collect the taxes in the organized county to which such country, district or reservation is attached shall collect the taxes, and is vested with all the powers which he may exercise in the organized county, and his official bond shall cover such taxes," etc.

In 1899, p. 218, Session Laws, the Oklahoma legislature passed an act which provided—

"That from and after the passage and approval of this act no taxes shall be assessed, levied or collected in any unorganized country, district or reservation which shall be or which may hereafter be attached to any county for judicial purposes, except taxes for the territorial and court funds. All acts and parts of acts in conflict herewith are hereby repealed."

The tax assessor of Noble County being of opinion that the law of 1899 was void for reasons hereafter stated, proceeded to assess for taxation under the act of 1895, *supra*, the cattle of the appellees which were grazing in the Indian reservation, instead of assessing such property for territorial and court funds only, as provided for in the act of 1899. The assessment for all purposes was at the rate of 26.2 mills on the dollar of valuation, divided as follows : For territorial purposes 5.2 mills, for court purposes 3 mills, for salaries 6 mills, for road and bridge fund 2 mills, for sinking fund 4 mills, for poor and insane 1 mill, for supplies 2 mills, for county school fund 2 mills and for contingent purposes 1 mill, making a total of 26.2 mills. If the assessment had been for territorial and court purposes only it would have been at the rate of 8.2 mills on the dollar of valuation.

The appellees insisted that the taxing officer had no right to assess them upon their property in the reservation at any greater rate than 8.2 mills for territorial and court purposes, as provided for by the act of 1899, while the appellants contended that the act of 1899 was void, and that the tax assessor had the power, and it was his duty under the act of 1895, to assess the property of the appellees situated in the reservation, for all purposes ; or, in other words, for the whole 26.2 mills.

The trial court held in favor of the tax officials and dismissed the petition of the appellees, but upon appeal the judgment of

dismissal was reversed by the territorial Supreme Court and the tax declared invalid for more than 8.2 mills assessed for territorial and court purposes. 11 Oklahoma, 357. The tax authorities have brought the case here by appeal.

Argued by *Mr. Horace Speed* for appellants. *Mr. William R. Harr* and *Mr. William J. Hughes* were on the brief.

Submitted by *Mr. Henry E. Asp, Mr. S. H. Harris* and *W. L. Barnum* for appellees.

Mr. Justice Peckham, after making the foregoing statement of facts, delivered the opinion of the court.

If the statute of 1899, limiting the right of assessment, is valid, it follows that the judgment of the Supreme Court of the Territory, setting aside an assessment for more than such limited amount, must be affirmed. But it is urged that the act of 1899 is void, and that, being void, the taxing officer was justified and required by the act of 1895 to make the assessment he did. The grounds upon which the appellants base their claim that the act of 1899 is invalid rest upon the provisions of section 6 of the organic act, approved May 2, 1890, 26 Stat. 81, and upon section 1 of the act approved July 30, 1886, 24 Stat. 170.

That portion of the sixth section of the act of May 2, 1890, material to the present inquiry, reads as follows:

"That the legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States, but no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents, nor shall any law be passed impairing the right to private property, nor shall any unequal discrimination be made in taxing different kinds of property, but all property subject to the taxation shall be taxed in proportion to its value."

Section 1 of the act approved July 30, 1886, 24 Stat. 170, provides:

" That the legislatures of the Territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases, that is to say :

\* \* \* \* \* \* \* \* 

"For the assessment and collection of taxes for territorial, county, township, or road purposes."

The main objection offered to the act of 1899 is that it results in a violation of the rule of uniformity which, as appellants allege, must exist in the same taxing district with reference to the same kind of property. The appellants contend that the Indian reservation is, for taxing purposes, a part of the county of Noble, and therefore part of the same taxing district as that county, and that the taxation under the act of 1899, for that reason, violates the rule of uniformity above referred to. As a basis for the contention that it is the same taxing district, it is maintained that the order of the Supreme Court made by virtue of section 9, of the act of 1890, attaching the reservation to Noble County for judicial purposes, made it a part of the judicial district of that county, and that the subsequent act of the legislature in substance placed the reservation under the general taxing jurisdiction of Noble County, and therefore made it a part of the same taxing district, and, being a part of the same district, the personal property in the reservation must be taxed at the same rate, and for all the purposes that personal property is taxed in the organized county of Noble.

It must be remembered at the outset that the reservation was never any part of Noble County, for the legislature had no power to make it such. *Thomas* v. *Gay,* 169 U. S. 264, 275. It was, as its name implies, a reservation set apart by the general government as a home for the Indians, and as such it formed no part of any organized county. Although, by reason of the act of 1895, the personal property in the reservation was subject to taxation in the organized county to which it was attached for judicial purposes, but of which it formed no part, yet that act did not thereby make the reservation a part of the same taxing district as the county. The act of 1895 (and that of 1899) reached for taxation the owners of

cattle, or any other personal property situated in the reservation, and that was the full effect of each act. All other property than that above described was left untouched, and, we assume, could not have been taxed if owned by Indians, by reason of the treaties or agreements under which the reservation was set apart for the use of such Indians. The right of taxation in the reservation was not as full and entire, even under the act of 1895, as it is in an organized county. This is a most important, if not conclusive, distinction, between the organized county and the reservation when considering whether one and the same taxing district has been created by legislation which does not in terms purport to create it. That legislation was only for the purpose of thereby reaching for taxation a certain class of property in the reservation, and the whole balance that was in the reservation was left untouched. What is there in such legislation which necessarily creates a single taxing district, within which all property must be taxed alike?

Then, too, the property under the act of 1895 was assessed by a separate officer, and although the same officer who collected the taxes in the organized county was authorized and required to collect the taxes in the reservation, yet that fact did not make it part of the same taxing district so as to prevent the legislature from altering the proportion of the taxes which the owner of property in the reservation should be liable to pay as compared with the owner of property in the organized county to which it was attached for certain purposes only. It was simply a convenient method of collecting the taxes on property in the reservation; but the legislature was not thereby prevented from exercising the right to recognize the difference between property situated within an organized county and that which was situated in a reservation, and to make a difference in the rate of taxation in the two cases. If a separate taxing district was not created under the act of 1895, still less can it be contended that one was created by the act of 1899, which enacted a different rate of taxation than prevailed in Noble County.

Even the assessment of the same amount of taxes and their collection by the same officers that acted for the organized

county would not necessarily render the reservation part of the same taxing district as the organized county. The material and important fact remains that the reservation is no part of the county, but is a totally distinct and separate domain, set apart for a home for Indians under the care and custody of the general government, and that taxation therein is permitted only to a limited extent and upon certain kinds of property, not including Indians or their property; and the imposition and collection of those taxes which are permitted do not thereby render the reservation a part of the same taxing district as the organized county to which it is attached for judicial purposes. The difference between the two domains, the reservation and the organized county, is radical and wide. The lands in the former are, as we have said, mostly wild and uncultivated and used principally for grazing purposes, and the domain is the home of a different and distinct race from that occupying the organized county, the inhabitants of which are of civilized races, following the customs of civilized life, and in almost everything differing from their Indian neighbors. Property therein is clearly very differently placed than is the same kind in an organized county. Those who live and own property in an organized county receive more benefit from the taxes levied for general purposes than do the owners of property located in a reservation. The act of 1899 makes certain personal property in the reservations bear its proportion of the burdens of taxation for territorial and court purposes, from which such property derives some benefit. The owners of such personal property can derive very little, if any, benefit from the taxes raised for other purposes than those just mentioned. There is no township government existing there; no provision for the organization of school and road districts or for the establishment of other municipal governments, and hence it may be seen that, even assuming the power of the legislature to tax for all such purposes at the same rate as in an organized county, and to provide for the collection and payment of such taxes into the county treasury for disbursement for county purposes, yet still the injustice of such a rate of taxation would naturally appeal to the legislature and result in

some legislation of the kind passed in 1899. The territorial
legislature has evidently recognized that fact and enacted that
statute in consequence.

All this goes to show the legislature never intended to create
a single taxing district of an organized county and a reservation
composed of such different materials. As further evidence of
the substantial difference between the two places, attention is
called to the fact that the general laws providing for taxation
in an organized county do not authorize such taxation in a res-
ervation, even after it has been attached to a county for judi-
cial purposes. There must be special legislative authority for
it. *Wagoner* v. *Evans,* 170 U. S. 588, 592.

Whether the legislature by the act of 1897, providing the
method of thereafter making assessments in townships by means
of one assessor for each county, did thereby repeal the provision
in the act of 1895, in relation to a special assessor for the In-
dian reservations, we do not determine, because even if such
were the case and the assessor for the county were the one to
make the assessment in the reservations also, the mere fact of
the change of the officer who was to make the assessment did
not on that account make a reservation part of the same taxing
district as the county to which it was attached for judicial pur-
poses, within the meaning of the rule requiring uniformity of
taxation within the same taxing district, assuming such rule to
apply to the Territory named.

The foundation of the rule which may be said generally to
obtain, that there shall be uniformity in taxation of the same
kind of property in the same taxing district, rests on the as-
sumption that in such district the circumstances regarding the
property to be taxed are ordinarily the same in substance, al-
though there may, and necessarily must be, some differences as
to the extent to which the different owners of property may
be benefited by the taxes collected thereon, and it is to be as-
sumed that an alteration as to rate would work an unjust and
illegal discrimination in taxing property situated alike. When
the difference is deep and radical between the two domains in
which the same kind of property may be situated, the law which
makes them one district for taxation, so that all the property

of the same kind in the same district must be taxed alike, and no reasonable distinction be permitted, must itself be so plain and urgent that no other intention can be suggested. No such case is now before us.

It is true the taxation in the reservation under the act of 1895 was for all purposes, and this court held that the act was not for that reason an illegal exercise of legislative power. It was recognized that there were differences in the amount of benefits derived from such taxation by the organized county as compared with the reservation, but it was not thought that, for that reason, the law was invalid. *Thomas* v. *Gay,* 169 U. S. 264. It was a matter of legislative discretion with which the courts had in general no concern.

It has not, however, been held that the legislature could not recognize the difference in circumstances and provide for a different rate of taxation for property in the reservation from that levied on property in the organized county to which the reservation was attached for judicial purposes. The power to make this distinction does not depend upon the existence of a separate officer to assess or to collect the tax.

If it required special legislative authority to tax at all, how can it reasonably be maintained by the taxing officer that the act which provides for the taxation, although at a reduced rate, is illegal? And if an act were once passed which authorized the same rate of taxation as in the organized county, could not the legislature repeal it? And if it could repeal, why could it not modify it by reducing the rate of taxation, although not totally exempting property from all taxation? If the legislature had repealed the act of 1895, and had passed no other, there plainly would be in that case no law for taxing the property in the reservation. If subsequently it passed an act for the taxation of such property at a reduced rate from that existing in the organized county, it could not be said there was any exemption from taxation, but on the contrary it would be the case of an act providing for taxation.

The only answer made by the appellants is the assumed fact that all property of the same kind in the same taxing district of this Territory must, in all circumstances, be taxed at the

same rate or must be wholly exempted, and that no discrimination can, in any event or under any circumstances, be permitted; otherwise there is a discrimination which is illegal. But if it be not in the same taxing district the reasoning fails, even if otherwise good.

The recognition by the legislature of the difference in the situation between Noble County proper and the Indian reservation attached to it for judicial purposes, and the taxation of the property in the latter at a different rate from that in the county, may be upheld upon the same principle as in the case of general city taxation, where the whole of the city is first assessed equally as a taxing district and then the more compact portions thereof are assessed at a greater rate and required to pay a greater proportionate share of the expense of the city government, because of the fact of the greater proportionate protection and benefit afforded by the police and fire departments and other like matters, to the portions of the city thus subjected to greater taxation.

Cooley, in his work on Taxation, p. 118, affirms the validity of such legislation, and refers in a note (3) to cases which establish it, and he dissents from the view taken by the Wisconsin court in *Knowlton* v. *Supervisors &c.*, 9 Wisconsin, 410, 421. Where the difference between the different portions of territory is plain and palpable the right of the legislature to recognize that difference and to provide for a difference in taxation cannot be denied without imposing, as said by Judge Cooley, restraints upon the constitutional power of the legislature, which cannot in reason be justified. Whether there is such a difference would generally be for the legislature to determine, although we would not say that the courts could not, in any possible state of facts, review that determination. In the case before us the legislative act providing for this difference in taxation amounts, in itself, to a provision for a different taxing district within the principles just stated, and certainly no one would say that it was not a most reasonable and just recognition of a plain difference in circumstances, which ought to lead to a difference in the proportion of taxation between the two places.

Whether the proper officer made the assessment or not is im-

material in this case. The defendants in error have not only not appealed from the decree of the Supreme Court, but they have paid the taxes assessed for the purposes mentioned in the act of 1899, and do not seek to recover them back in this case, and the question is of no consequence to them.

In the view we take of the case we are unable to see that any provision of the act of Congress of 1890, organizing the Territory, or the other act of 1886, in regard to Territories then or thereafter to be organized, has been violated by the territorial act of 1899, and the judgment of the Supreme Court of Oklahoma is, therefore

*Affirmed.*