**GALLARDO, Treasurer, et al. v. PORTO RICO RY., LIGHT & POWER CO.**

Circuit Court of Appeals, First Circuit.
April 11, 1927.

No. 2058.

1. **Courts** ⟨⟩328(3)—Power company's suit to enjoin enforcement of Porto Rico Water Power Act held to involve jurisdictional amount (Acts Porto Rico 1925, No. 60).

Power company's suit to enjoin enforcement of Porto Rico Water Power Act (Acts Porto Rico 1925, No. 60), *held* to involve jurisdictional amount; plaintiff's tax under the act for any one of the three years involved being in excess of $3,000.

2. **Injunction** ⟨⟩112—Suit to enjoin enforcement of Porto Rico Water Power Act, instituted day after it became effective, held not premature (Acts Porto Rico 1925, No. 60).

Power company's suit to enjoin enforcement of Porto Rico Water Power Act (Acts 1925, No. 60), instituted one day after act became effective, *held* not premature.

3. **Injunction** ⟨⟩85(1)—Suit to recover tax paid under protest held not adequate remedy at law, precluding suit to enjoin enforcement of Porto Rico Water Power Act (Acts Porto Rico 1923, No. 68; Acts Porto Rico 1924, No. 9; Acts Porto Rico 1925, No. 60).

Acts Porto Rico 1923, No. 68, and Acts Porto Rico 1924, No. 9, permitting suit to re-

cover tax paid under protest, do not afford a plain, adequate, and complete remedy at law, precluding power company's suit to enjoin enforcement of Porto Rico Water Power Act (Acts 1925, No. 60), in which whole undertaking was attacked as invalid.

**4. Constitutional law ⊛⇒62—Porto Rico Water Power Act held not invalid, as delegating legislative powers to Commissioner of Interior (Acts Porto Rico 1925, No. 60).**

Porto Rico Water Power Act (Acts 1925, No. 60), laying out scheme for development, providing means for it, and giving adequate general directions, *held* not invalid as delegating legislative powers to the Commissioner of the Interior.

**5. Taxation ⊛⇒23—Porto Rico Water Power Act held not invalid, as imposing tax for other than "public purpose," notwithstanding contemplated profits (Acts Porto Rico 1925, No. 60, § 3).**

To *conserve and develop water resources* for domestic use, irrigation, and light and power are public uses, and hence Porto Rico Water Power Act (Acts 1925, No. 60), is not invalid, as imposing tax for other than a "public purpose." notwithstanding section 3 thereof contemplates possible profits to go into regular funds of the insular treasury.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Purpose.]

**5. Taxation ⊛⇒23—Possibility of profit under Porto Rico Water Power Act does not make undertaking private enterprise, nor is expense to general taxpayer proper test of public use (Acts Porto Rico, No. 60).**

The possibility of profits under Porto Rico Water Power Act (Acts 1925, No. 60), does not constitute the undertaking a private enterprise, nor is expense to the general taxpayer a test of public use.

**7. Statutes ⊛⇒123(3)—Porto Rico Water Power Act held not violative of provision of Organic Act prohibiting bills containing more than one subject expressed in title (Acts Porto Rico 1925, No. 60; Organic Act Porto Rico, § 34 [U. S. Comp. St. § 3803n]).**

Porto Rico Water Power Act (Acts 1925, No. 60), entitled "An act levying annually for three years only * * * a special tax * * * for the purpose of creating a fund to be devoted to the construction of works for the development of the water power of the island of Porto Rico, * * *" *held* not violative of Organic Act Porto Rico, § 34 (U. S. Comp. St. § 3803n), providing, "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

**8. Public service commissions ⊛⇒2—Porto Rico Water Power Act held not invalid, as attempt to nullify provision of Organic Act providing franchises "shall be made by Public Service Commission" (Water Power Act Porto Rico 1925, No. 60, § 5; Organic Act Porto Rico, § 38 [U. S. Comp. St. § 3803p]).**

Porto Rico Water Power Act (Acts 1925, No. 60), which in section 5 declares a new public policy, and provides, "It shall be the duty of the Public Service Commission to see that said policy is not impaired by grants of franchises," *held* not invalid as an attempt to nullify Organic Act Porto Rico, § 38 (U. S. Comp. St. § 3803p), providing that all grants of franchises "shall be made by a Public Service Commission."

**9. Statutes ⊛⇒64(1)—Invalidity of minor provision does not affect remainder of otherwise valid statute.**

The invalidity of a minor and nonessential provision does not affect the remainder of an otherwise valid statute.

**10. Taxation ⊛⇒43—Porto Rico Water Power Act, imposing special tax on real estate only and exempting two islands, held not violative of uniform taxation requirement (Acts Porto Rico 1925, No. 60; Organic Act Porto Rico, § 2 [U. S. Comp. St. § 3803aa]).**

Porto Rico Water Power Act (Acts 1925, No. 60), imposing a special tax for three years only on all real property not exempt in the island of Porto Rico, and exempting the islands of Vieques and Culebra, *held* not violative of Organic Act Porto Rico, § 2 (U. S. Comp. St. § 3803aa), requiring uniform taxation.

**11. Statutes ⊛⇒56—Failure of Congress to annul act of Legislature of Porto Rico is not equivalent to adoption.**

The failure of Congress to annul an act of the Legislature of Porto Rico under its reserve power is not equivalent of adoption making the act an act of Congress itself.

**12. Constitutional law ⊛⇒48—Unconstitutionality of act must clearly appear, to warrant courts in so holding.**

Unconstitutionality must clearly appear, to warrant courts in holding an act invalid.

**13. Statutes ⊛⇒55—Provision of Political Code of Porto Rico cannot either extend or limit application of provision of Organic Act (Pol. Code Porto Rico, § 290; Organic Act Porto Rico, § 2 [U. S. Comp. St. § 3803aa]).**

Pol. Code Porto Rico, § 290, providing that all property not expressly exempt from taxation shall be assessed and taxed, can neither limit nor extend the application of Organic Act Porto Rico, § 2 (U. S. Comp. St. § 3803aa).

**14. Taxation ⊛⇒40(1)—"Uniformity" of taxation does not mean universality.**

As a principle of taxation, it is firmly established that "uniformity" does not mean universality.

[Ed. Note.—For other definitions, see Words and Phrases, Uniformity.]

**15. Taxation ⊛⇒605—Amendment of Porto Rico Water Power Act, prohibiting suits to restrain assessment or collection of taxes, held inapplicable to pending suit (Act Cong. March 4, 1927, amending Organic Act Porto Rico, § 48; Acts Porto Rico, No. 60).**

Act Cong. March 4, 1927, amending Organic Act Porto Rico, § 48, by providing, "No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Porto Rico shall be maintained in the District Court of the United States for Porto Rico," was not intended to apply to pending suits, and did not deprive court of its jurisdiction of ac-

tion then pending to enjoin enforcement of Porto Rico Water Power Act (Acts 1925, No. 60).

Appeal from the District Court of the United States for the District of Porto Rico; Ira K. Wells, Judge.

Action by the Porto Rico Railway, Light & Power Company against Juan G. Gallardo, Treasurer, and others. Decree for plaintiff, and defendants appeal. Reversed and remanded.

William C. Rigby, of Washington, D. C. (Russell H. Brennan, of Washington, D. C., and George C. Butte and J. A. Lopez Acosta, both of San Juan, Porto Rico, on the brief), for appellants.

Carroll G. Walter, of New York City (Edward J. Patterson, of New York City, and J. Henri Brown, of San Juan, Porto Rico, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The court below enjoined the appellants, the treasurer and the commissioner of the interior of Porto Rico, from enforcing the Water Power Act of July 28, 1925 (Acts Porto Rico 1925, No. 60). The act took effect on October 26, 1925, and the bill was filed on the next day. Sections 1, 2, 3, and 4 are as follows:

"Section 1. For the purpose of providing funds to begin and continue the development of such water power of the island as may be made use of economically and to advantage, according to the hydrographic survey being made by direction of the Legislature of Porto Rico with funds appropriated for the purpose in the budget for the biennium 1923–1925, a special tax of one-tenth of one per cent. of the assessed valuation of all taxable real property not exempt from taxation in the island of Porto Rico, except Vieques and Culebra, is hereby levied, and the same shall be collected annually in addition to all other taxes levied under other laws in force, during the fiscal years 1925–26, 1926–27 and 1927–28.

"Sec. 2. The proceeds of said special tax shall be covered into a fund to be known as the 'Special Fund for the Development and Use of the Water Power of the Island of Porto Rico,' which shall be placed at the disposal of the commissioner of the interior for the survey, preparation of plans and construction of all such works as may be necessary for the development of hydraulic power and its subsequent utilization, wherever possible, for agricultural or industrial purposes and municipal use of available waters, said works to in-clude the construction of reservoirs, tunnels, channels and conduits and the laying of piping, the construction of hydroelectric plants and their auxiliaries, transmission and distribution lines, transformer substations, and in general, all such works and accessory equipment and all such incidental expenses as may be required for the complete termination of each project of development that may be undertaken: Provided, that in the survey and construction of works to be done under the provision of this act, preference shall be given to such works as are to be carried out on the largest rivers that will develop the greatest electric power.

"Sec. 3. Such receipts as may be derived from the sale of electric power produced by such electric plants as may be built hereunder, together with receipts from the sale of available water shall first be devoted to the payment of annual maintenance and operation expenses of the system or systems constructed, and the remainder shall be distributed as follows: One-third shall be covered into the special fund created hereunder in order to restore and increase the same with the object of providing funds to continue extending the systems constructed in accordance with this act, and of carrying out such new projects as may answer the purposes hereof; and the remaining two-thirds shall be covered into the regular funds of the insular treasury: Provided, that during the first period of operation of the works constructed, and until receipts from such operation cover annual expenses of operation and maintenance, such deficit as there may be in said expenses shall be met out of the special fund hereby created: Provided, further, that when development of all such water power of the island as may be economically utilized for the purposes herein stated is completed, and when the commissioner of the interior so certifies to the treasurer of Porto Rico, said receipts shall be devoted primarily to cover annual expenses of maintenance and operation; and of the balance, fifteen (15) per cent. shall be covered into a reserve fund to be devoted to improvements and renewals, and the remaining eighty-five (85) per cent. shall be covered into regular funds of the insular treasury.

"Sec. 4. The commissioner of the interior is hereby authorized, empowered and directed to attend to all matters connected with the administration of such works and services as may be constructed and established hereunder; to appoint such personnel and establish such organization as he may deem necessary, and subject to the provisions of the Public Service Law, he shall make and award, in the

name of the people of Porto Rico, all such contracts as may be necessary for the sale of electric power and water. The auditor of Porto Rico, upon consultation with the commissioner of the interior, shall establish such system of accounting as may be required adequately to control and keep a statistical record of all receipts and expenditures incurred in connection with the construction, maintenance and operation of the works whose construction and operation are hereby authorized."

Section 5 provides that the designated engineer shall have the right to enter upon lands for making surveys, the owner to be compensated for any damage done, and that the commissioner of the interior may institute eminent domain proceedings to obtain the requisite lands and rights for the works "declared to be works of public utility." The commissioner is also given by this section power to obtain such rights by negotiation, which provides, further, "that whereas the enactment of this bill by the Legislature determines a new policy in the utilization of public waters by the people of Porto Rico, it shall be the duty of the Public Service Commission to see that said policy is not impaired by grants of franchises."

Section 6 reads:

"For the purpose of providing funds uninterruptedly to continue surveys already commenced, and to further the preliminary work permitting due development of the work to be undertaken under this act, the treasurer of Porto Rico is hereby authorized to make such advances out of any funds in the treasury, not to exceed thirty thousand (30,000) dollars, as the commissioner of the interior may request, the amount of advances so made to be reimbursed out of the proceeds of the aforesaid tax, when collected."

The appellee sues in two capacities: (1) As a taxpayer; (2) as the owner of franchises and other property which it claims would be irreparably damaged by the government's project. Answers were filed; the plaintiff's president and general manager testified; and the court below, in a long opinion, held the act void on four grounds, dealt with below, and issued an injunction in broad and inclusive form. The evidence shows that the plaintiff furnishes electric current in 28 municipalities; that its investment in property devoted to the lighting and power business was, as of December 31, 1924, over $4,500,000; that its last tax paid was based on an assessed valuation of $3,435,207; that during the last year it earned 9⅔ per cent. on its investment; that it had pending applications for franchises to develop water power on certain streams, in or-

der to obtain additional power needed for its rapidly developing business; that power developed by steam would cost at least one-third more than from a hydroelectric plant; that there were 8 to 10 rivers in Porto Rico available for hydroelectric development; that competition from the government might reduce the plaintiff's net earnings $100,000 a year. None of the plaintiff's franchises are, in terms, exclusive; all are "subject to amendment, alteration or repeal" under the Act of April 12, 1900 (31 Stat. 77). Cf. section 37 of the Organic Act (39 Stat. 951 [Comp. St. § 3803oo]).

Parenthetically, we observe that the evidence leaves it doubtful whether the government project will work competitively or cooperatively with plaintiff's. On this record it is quite conceivable that the contemplated government development will only supplement and perhaps help the plaintiff's existing plants and lines. On the other hand, we cannot, on this record, hold that the result may not be harmful competition.

[1] The assignments of error challenge the jurisdiction of the court as well as the substantive grounds of the decision.

The objections to the jurisdiction cannot be sustained. The fundamental question is, whether the act of the Legislature of Porto Rico is in conflict with the Organic Act. Camunas v. P. R. Ry., Lt. & Pr. Co. (C. C. A.) 272 F. 924. Porto Rico Tax Cases (C. C. A.) 16 F.(2d) 545.

There is nothing in the contention of a lack of jurisdictional amount. Plaintiff's tax for only one of the three years involved exceeds $3,000. It is unnecessary to consider whether the case falls, as to the amount involved, under the rule laid down in Berryman v. Whitman College, 222 U. S. 334, 32 S. Ct. 147, 56 L. Ed. 225.

[2] Nor is the suit premature. It must be assumed (the answers admit) that the treasurer and commissioner intend to do their full apparent duty under the act. Davis v. Berry (D. C.) 216 F. 413, 415. The plaintiff attacks the whole undertaking as invalid; if this contention be sound, it is clear that the threatened injury was imminent, and a suit to test the power was most appropriate and timely. Risty v. Chicago, etc., R. R., 270 U. S. 378, 388, 46 S. Ct. 236, 70 L. Ed. 641. It is of great practical importance to Porto Rico, as well as to the plaintiff, to have an early and final decision as to the validity of this important legislation. First Nat. Bank v. Albright, 208 U. S. 548, 28 S. Ct. 349, 52 L. Ed. 614, is not in point.

[3] Clearly there is no plain, adequate, and complete remedy at law, even if the legislation of 1923 and 1924 (Act No. 68 of 1923 and Act No. 9 of 1924) be held plainly to permit suit in the federal court to recover a tax paid under protest. Porto Rico Tax Cases (C. C. A.) 16 F.(2d) 545. For, if the plan for government development of hydroelectric power be unauthorized, the plaintiff is entitled to be freed from such possibly damaging competition. Interstate Busses Corporation v. Holyoke St. R. Co. et al. (D. C.) 11 F.(2d) 161, affirmed by United States Supreme Court January 3, 1927, 47 S. Ct. 298, 71 L. Ed. ——; Memphis St. R. Co. v. Rapid Transit Co., 133 Tenn. 99, 179 S. W. 635; L. R. A. 1916B, 1143, 1148, Ann. Cas. 1917C, 1045; 32 C. J 232.

We turn to the merits:

[4] (1) Plaintiff contends, and the court below held, that the statute is invalid because it undertakes to delegate legislative powers to the commissioner of the interior. This was error. The functions of the commissioner are executive and administrative. The act lays out the scheme, provides the means for it, and gives adequate general directions. This is enough. There is nothing in the Organic Act requiring more detail from the Legislature. 12 C. J. p. 840; In re Chapman, 166 U. S. 671, 17 S. Ct. 677, 41 L. Ed. 1154; Railroad Com. v. Central of Georgia R. Co. (C. C. A.) 170 F. 225, 238.

[5] (2) Equally untenable is the holding of the court below that the tax is not imposed for a public purpose. To conserve and develop water resources, for domestic use, for irrigation, and for power and light, are common public uses. Green v. Frazier, 253 U. S. 233, 40 S. Ct. 499, 64 L. Ed. 878, Jones v. Portland, 245 U. S. 217, 38 S. Ct. 112, 62 L. Ed. 252, L. R. A. 1918C, 765, Ann. Cas. 1918E, 660, Holton v. Camilla, 134 Ga. 560, 68 S. E. 472, 31 L. R. A. (N. S.) 116, 20 Ann. Cas. 199, Milligan v. Miles City, 51 Mont. 374, 153 P. 276, L. R. A. 1916C, 395, and Andrews v. So. Haven, 187 Mich. 294, 153 N. W. 827, L. R. A. 1916A, 908, Ann. Cas. 1918B, 100, are all much closer to the dividing line between public use and private enterprise than is this case. Cf. Village of Euclid v. Ambler Realty Co., 272 U. S. ——, 47 S. Ct. 114, 71 L. Ed. ——; Tyson v. Banton, 47 S. Ct. 426, 71 L. Ed. ——, decided February 28, 1927.

[6] The court below grounded its decision as to this point upon section 3 of the act, which contemplates possible profits, part of which are to go "into regular funds of the insular treasury." But this possibility of net revenue does not prevent the general purposes from being public. How far public service utilities shall derive revenue from rates (referred to in the New England Divisions Case as taxes, 261 U. S. 184, 196, 43 S. Ct. 270, 67 L. Ed. 605), and how far from ordinary tax levies, are pure questions of legislative expediency. Meriwether v. Garrett, 102 U. S. 472, 501, 26 L. Ed. 197. The possibility of profit from such rates does not transmute a public utility into a private enterprise. Expense to the general taxpayer is not the test of public use.

[7] (3) Plaintiff rather faintly suggests that the act is void because of defective title, which reads:

"An act levying annually for three years only, 1925–26, 1926–27 and 1927–28, a special tax additional to all other taxes levied under other laws in force, at the rate of one-tenth of one per cent. on the assessed valuation of all taxable real property, not exempt from taxation, in the island of Porto Rico, for the purpose of creating a fund to be devoted to the construction of works for the development of the water power of the island of Porto Rico, in order to take advantage of natural resources and provide revenue for the insular treasury, and for other purposes."

Section 34 of the Organic Act (Comp. St. § 3803n) provides that "no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." The court below found it unnecessary to decide this point. It is without merit. The title shows clearly that a special tax is to be levied "for * * * the construction of works for the development of the water power of the island of Porto Rico." This states a single main object; and is fully sufficient to guard against the evil confusion prohibited by the Organic Act. Carter County v. Sinton, 120 U. S. 517, 7 S. Ct. 650, 30 L. Ed. 701; Jonesboro City v. Cairo & St. Louis R. Co., 110 U. S. 192, 4 S. Ct. 67, 28 L. Ed. 116; Louisiana v. Pilsbury, 105 U. S. 278, 26 L. Ed. 1090; Benedict, Treas., v. Porto Rican American Tobacco Co. (C. C. A.) 256 F. 422.

[8] (4) Plaintiff argues the whole Water Power Act void on the ground that the provision in section 5 (quoted above), that it shall be the duty of the Public Service Commission not to impair the new policy in the utilization of public waters by grants of franchises, is an attempt to nullify section 38 of the Organic Act (Comp. St. § 3803p), which reads:

"All grants of franchises, rights, and privileges of a public or quasi public nature *shall be made by a public service commission*, consisting of the heads of executive departments, the auditor, and two commissioners to be

elected by the qualified voters at the first general election to be held under this act, and at each subsequent general election thereafter." [9] We cannot accept that proposition. Even if there be irreconcilable inconsistency, so that the provision in section 5, supra, must be held void, this would not invalidate the whole scheme of the act. The proviso in section 5 is not of the essence of the plan. The invalidity of a minor and non-essential provision does not affect the remainder of an otherwise valid statute. State v. St. Louis, 241 Mo. 231, 145 S. W. 801. But we do not hold that there is any inconsistency between section 5 of the act and section 38 of the Organic Act. It is. not now necessary or desirable for this court to determine the scope and effect of section 38. Plainly it may be argued that this section refers only to corporate franchises, not governmental undertakings, and that its scope is limited to the *terms* of franchises granted pursuant to general principles laid down by the Porto Rican Legislature. If and when the Public Service Commission undertakes to grant a franchise alleged to be inconsistent with the new public policy of the Water Power Act, and the question is presented by a plaintiff having a legal right to present the question, it will be time enough for this court to deal with it. Plainly, the plaintiff cannot now claim present or prospective injury from any such alleged inconsistency. Its right to apply to the Public Service Commission for any franchise the commission has power to grant under the Organic Act has not been impaired by the Water Power Act. If, within the limits of its discretionary powers (whatever they be), the commission should follow the new public policy and deny the application, plaintiff would have no legal cause of complaint.

On this record the contention is untenable.

[10] (5) Plaintiff urges, and the court below held, the act in conflict with the requirement in section 2 of the Organic Act (Comp. St. § 3803aa), "That the rule of taxation in Porto Rico shall be uniform," in that the tax is laid only on realty and also excludes the two islands, Vieques and Culebra. It contends that both realty and personality must be taxed, and in all the islands.

In our view, this is the only point, on either side, calling for any serious consideration. It is the gist of the whole controversy. [11] While the Organic Act is a quasi Constitution for Porto Rico, it is, as defendants argue, also legislation by Congress, which has reserved complete power to annul the acts of the Porto Rican Legislature, and has not annulled the Water Power Act. This failure to annul has some, though not controlling, weight. But we are not prepared to adopt the appellants' broad contention that "the Legislature of Porto Rico is an agent of Congress," and that therefore the "act has now become in effect an act of Congress itself." This proposition goes too far. Failure to annul is not the full equivalent of adoption. None of the cases cited and relied upon support the appellants' broad contention as to agency. Chuoco Tiaco v. Forbes, 228 U. S. 549, 557, 558, 33 S. Ct. 585, 57 L. Ed. 960; Porto Rico v. Am., etc., R. Co. (C. C. A.) 254 F. 369, 377; Camunas v. P. R. Ry., etc., Co. (C. C. A.) 272 F. 924, 931, and cases cited; Fajardo Sugar Co. v. Holcomb, Auditor (C. C. A.) 16 F.(2d) 92.

[12] Nevertheless, the Organic Act is legislation by a government that levies taxes for extensive reclamation projects, including water developments, that built the Panama Canal, now becoming profitable, and that is apparently committed to buying and probably operating the Cape Cod Canal. No narrow and crippling construction should be given to the taxing power, granted by such a government, to this possession of Porto Rico. Treating the question of the construction of the Organic Act as strictly one of constitutionality (as it is not), doubt is not enough; it must be clearly unconstitutional to warrant the courts in holding the act void. Green v. Frazier, 253 U. S. 233, 40 S. Ct. 499, 64 L. Ed. 878.

Turning to the implied, underlying theory of the Water Power Act, it is clear that the Legislature of Porto Rico regarded the development of water power as involving special and peculiar benefits to the lands of the island of Porto Rico, benefits not accruing, in the same general way, to personalty; that the detached islands were excepted from the burden, because also prospectively excluded from the benefits. We cannot say that this underlying theory is not sound and just. Foster v. Pryor, 189 U. S. 325, 334, 23 S. Ct. 549, 47 L. Ed. 835. Most kinds of personal property (largely brought in from the United States) would obviously not be affected by increased availability of electric power and light, or by water for domestic or irrigation uses, except as the general prosperity of the island might provide increased purchasing power for such personalty. But light, power, and water, made generally or largely available, might well increase the agricultural productivity of the lands and also make large areas better fit for wholesome and comfortable residence. The scheme bears some analogy to the underlying theory of betterment assessments. Illinois Central R. Co. v. Decatur, 147 U. S. 190,

198, 13 S. Ct. 293, 37 L. Ed. 132; Bridgeport v. N. Y. & N. H. R. Co., 36 Conn. 255, 262, 4 Am. Rep. 63; New London v. Miller, 60 Conn. 112, 116, 22 A. 499.

It is somewhat like the familiar plan of districts, with special water supplies or sewerage systems, supported by specially localized taxes, such as the metropolitan water and sewage districts for Boston and vicinity. Cf. 37 Cyc. pp. 723, 749, and cases cited. The acts under which the Boston Elevated trolley lines and the Eastern Street Railway lines are now operated, are illustrations of the same general principle of tax laws grounded on the theory of correlating special burdens to special benefits. Louisiana v. Pilsbury, 105 U. S. 278, 295, 26 L. Ed. 1090; 37 Cyc. p. 735. Historically, the same principle has been applied to governmental units as small as school districts in country towns. 35 Cyc. p. 998; Maltby v. Tautges, 50 Minn. 248, 52 N. W. 858. On analysis, such apparent exceptions are in effect attempts to secure uniformity, in the sense of proportioning burdens to benefits. The overwhelming weight of authority has long supported such taxes under state Constitutions containing the same sort of requirement as to uniformity found in the Organic Act. Counsel for Porto Rico assert (we presume correctly) that such provisions are found in the Constitutions of all our states, except New York and Connecticut.

The plaintiff's chief reliance is Gilman v. Sheboygan, 2 Black, 510, 17 L. Ed. 305. As the Supreme Court held itself bound (2 Black, 518) by the construction put on the Wisconsin Constitution by the Wisconsin court of last resort, the mere affirmation by that court gives the decision no additional weight; it is in legal effect but a decision, many years ago, of the Supreme Court of Wisconsin. In Lund v. Chippewa County, 93 Wis. 640, 67 N. W. 927, 34 L. R. A. 131, the Wisconsin court held that "the rule of uniformity is not broken merely because a town or city or county raises a special tax for local purposes." The reasoning of this opinion, made in 1896, is hardly consistent with the rather technical interpretation of the Constitution made in Gilman v. Sheboygan and in Knowlton v. Supervisors, 9 Wis. 410, a generation earlier. State v. Supervisors, 70 Wis. 485, 36 N. W. 396, accords with the later views of that court. Cf. Florida Central & P. R. Co. v. Reynolds, 183 U. S. 471, 480, 22 S. Ct. 176, 46 L. Ed. 283.

In Louisiana v. Pilsbury, 105 U. S. 278, 296 (26 L. Ed. 1090), the court, citing and reviewing many pertinent cases, said: "That taxation for state purposes, to be equal and uniform within the meaning of the Constitu-

tion of 1845, need not have been universal, is a proposition which calls for no argument. It was only necessary that all property on which taxes were levied—not all property in this state—should be taxed according to its value, and in conformity with some fixed rate or mode. State v. Lathrop, 10 La. Ann. 398; New Orleans v. Commercial Bank, 10 La. Ann. 735." The appellant cites and quotes from Township of Pine Grove v. Talcott, 19 Wall. 666, 675 (22 L. Ed. 227):

"The eleventh clause of the same article declares that the Legislature shall provide a *uniform rule of taxation,* except as to property paying specific taxes, and that taxes shall be levied upon such property as shall be prescribed by law. The object of this provision was to prevent unjust discriminations. It prevents property from being classified and taxed as classed, by different rules. *All kinds of property must be taxed uniformly, or be entirely exempt.*"

But the decision in that case is, on analysis, an extraordinary illustration of the opposite doctrine; for there (contrary to the generally accepted rule) the Supreme Court refused to adopt the construction of the Constitution of Michigan, made by a majority of the Supreme Court of that state (Cooley, Campbell, and Christiancy, JJ.; People v. Salem, 20 Mich. 452, 4 Am. Rep. 400; People ex rel. Bay City v. Treasurer, 23 Mich. 499), but held the township liable on bonds issued to aid the construction of a railroad running through the township. And immediately following the dictum quoted above, the court said (Swayne, J.):

"The uniformity must be coextensive with the territory to which the tax applies. If a state tax, it must be uniform all over the state. If a county or city tax, it must be uniform throughout such county or city. But the rule does not require that taxes for the same purposes shall be imposed in different territorial subdivisions at the same time. If so a county could not levy a tax to build a courthouse, jail, or infirmary without rendering it necessary for every other county in the state to do the same thing without reference to the different circumstances of each one. So here one township through which the railroad was to pass, expecting to be largely benefited by its construction, might give its bonds and impose the tax requisite to meet the principal and interest, while another township similarly situated might refuse to do so. The rule would have no application to the latter."

[13, 14] Nor does section 290 of the Political Code of Porto Rico, providing "that all property not expressly exempted from taxation

shall be assessed and taxed," help the plaintiff; for the present question is whether the act of Congress invalidates taxation not—territorially and as to property—all inclusive. Section 290 can neither extend nor limit the application of section 2 of the Organic Act. The logic of the plaintiff's position would exclude even exemptions, the validity of which it admits; so also as to classifications. In effect, the claim is for universality of taxation, not for uniformity, within the fair and generally accepted meaning of the term. But no principle of taxation is better settled than that uniformity does not mean universality. 37 Cyc. p. 740, and cases cited; 37 Cyc. pp. 734, 735, 736.

The principle is stated in Cooley's Constitutional Lim. (5th Ed.) p. 638, as follows:

"The constitutional requirement of equality and uniformity only extends to such subjects of taxation as the Legislature shall determine to be properly subject to the burden. The power to determine the persons and the objects to be taxed is intrusted exclusively to the legislative department; but over these objects the burden must be spread, or it will be unequal and unlawful as to such as are selected to make payment." Moog v. Randolph, 77 Ala. 597. Cf. State Board of Assessors v. Central R. Co., 48 N. J. Law, 146, 4 A. 578; Farris v. Vannier, 6 Dak. 186, 42 N. W. 31, 3 L. R. A. 713; Crafts v. Ray, 22 R. I. 179, 46 A. 1043, 49 L. R. A. 604; Colton v. Montpelier, 71 Vt. 413, 45 A. 1039.

"It is well settled that there is nothing in the Fourteenth Amendment which requires a state to tax all property within its jurisdiction at the same rate. Different classes of property may be taxed at different rates as the public policy of the state may seem to require and excises may be imposed upon certain occupations and not upon others without violating the provisions of the amendment unless there is a clearly hostile discrimination against certain persons or classes, not based upon any reasonable distinction." Nichols on Taxation in Massachusetts, p. 53; Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 237, 10 S. Ct. 533, 33 L. Ed. 892; Home Insurance Co. v. New York, 134 U. S. 596, 606, 10 S. Ct. 593, 33 L. Ed. 1025; Giozzi v. Tiernan, 148 U. S. 662, 13 S. Ct. 721, 37 L. Ed. 599.

Our general conclusion is that plaintiff has raised no more than a thin and shadowy doubt as to the validity of the act; that therefore, under elementary principles, the courts have

no right to interpose a veto. King v. Mullins, 171 U. S. 404, 435, 18 S. Ct. 925, 43 L. Ed. 214.

[15] This case was submitted to this court in January, 1927. On March 22, 1927, the Attorney General of Porto Rico filed in this case and in Nos. 2052, 2053, and 2054 a motion to remand to the District Court of the United States for Porto Rico, with directions to dismiss each of said cases for want of jurisdiction. This motion is grounded on the Act of Congress approved March 4, 1927, amending section 48 of the Organic Act of Porto Rico by adding thereto the following:

"No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Porto Rico shall be maintained in the District Court of the United States for Porto Rico."

It is contended that this act destroys the jurisdiction otherwise inherent in the court below and in this court. We are unable to adopt that view. The interpretation of this act falls under the general rule recently stated by the Supreme Court in Fullerton v. Northern Pacific R. Co., 266 U. S. 435, 437, 45 S. Ct. 143, 144 (69 L. Ed. 367), as follows:

"It is a rule of construction that all statutes are to be considered prospective, unless the language is express to the contrary, or there is a necessary implication to that effect" —citing Harvey v. Tyler, 2 Wall. 328, 347, 17 L. Ed. 871; Sohn v. Waterson, 17 Wall. 596, 599, 21 L. Ed. 737; Twenty Per Cent. Cases, 20 Wall. 179, 187, 22 L. Ed. 339; Chew Heong v. United States, 112 U. S. 536, 559, 5 S. Ct. 255, 28 L. Ed. 770; Shwab v. Doyle, 258 U. S. 529, 534, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454; Hopkins v. Lincoln Trust Co., 233 N. Y. 213, 135 N. E. 267.

We see nothing in this amendment indicating that Congress intended to apply it to pending cases. Nor do we think that the word "maintained" is to be construed to cover actions already instituted. Similar language has been held inapplicable to pending suits. Moon v. Durden, 2 W., H. & G. (Exch.) 21 (1848); Knight v. Lee (1893) L. R. 1, Q. B. D. 41; Burbank v. Inhabitants of Auburn (1850) 31 Me. 590; Gumpper v. Waterbury Traction Co. (1896) 68 Conn. 424, 36 A. 806; Smith v. Lyon (1876) 44 Conn. 175.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellants recover costs of appeal.